LASSER, P.J.T.C.
Bernards Township owns and operates a sanitary landfill for the benefit of township residents at no charge to users of the landfill. The township also owns and operates a recycling facility which must be used by residents using the landfill. A *101 closure plan for the township landfill has been approved by the Department of Environmental Protection. The Recycling Act, N.J.S.A. 13:lE-95 et seq., and the Sanitary Landfill Facility Closure and Contingency Fund Act, N.J.S.A. 13:1E-100 et seq. (“Landfill Closure Act,” sometimes referred to, together with the Recycling Act, as “the acts”) impose taxes on the owners and operators of sanitary landfills in the State. Bernards Township failed to file the tax returns required by the acts, with the result that the Director of the Division of Taxation filed two certificates of debt for the period January 1982 through September 1983. The Director seeks a total of $8,400 for the recycling tax and $10,500 for the closure tax. Taxpayer has reserved the right to contest the amount of tax if it is found to be subject to the tax.
The township filed complaints with the Tax Court and the Superior Court challenging the taxes and seeking a declaratory judgment. The Tax Court has jurisdiction to hear these cases.[1] These complaints were consolidated in the Tax Court.
Both sides have moved for summary judgment. The issue before the court is whether the taxes imposed by the acts apply to municipalities that own and operate landfills.
The Recycling Act
The Recycling Act imposes a tax, administered by the Director of the Division of Taxation, on the owner or operator of every sanitary landfill facility at a rate of 12c per cubic yard of solid waste accepted for disposal, decreasing to 6c per cubic yard for solid waste accepted on or after January 1, 1986. N.J.S.A. 13:lE-95.
The revenues generated by this tax are placed in the state recycling fund, a dedicated fund administered jointly by the Departments of Energy and Environmental Protection. N.J. S.A. 13:lE-96(a). The monies in the fund are allocated for *102 specific purposes which include public information programs on recycling and anti-littering activities, the planning and funding of county and municipal recycling programs, recycling grants to municipalities, low interest loans for the benefit of recycling industries and businesses, and the planning and funding of state recycling programs. N.J.S.A. 13:lE-99 specifically exempts municipal expenditures for the collection or disposal of solid waste required by the act from the restrictions of the Local Government Cap Law, N.J.S.A. 40A:4-45.3g[2]
The Landfill Closure Act
The Landfill Closure Act was enacted as a result of legislative concerns relating to the proper closure of sanitary landfill facilities and the accompanying impact on public health, safety and welfare. N.J.S.A. 13:1E-101. The Landfill Closure Act imposes a tax scheme administered by the Director of the Division of Taxation that is similar to that in the Recycling Act. The tax is levied upon the owner or operator of every sanitary landfill facility at the rate of 15$ per cubic yard of solid material and .2$ per gallon of liquids. N.J.S.A. 13:1E-I04(a).
The revenues generated by the landfill closure tax are deposited in the Landfill Facility Contingency Fund, a dedicated fund administered by the Department of Environmental Protection. N.J.S.A. 13:1E-105. The contingency fund is strictly liable for all direct and indirect damages suffered by any person as the proximate result of the operation or closure of any sanitary landfill facility.
In addition to the tax establ'shed in N.J.S.A. 13:1E-104, the Landfill Closure Act further provides for the creation of an escrow fund by every owner or operator of a sanitary landfill facility. N.J.S.A. 13:1E-109. Deposits based on a charge of 30<t per cubic yard or .4$ per gallon are to be made to the escrow fund on a monthly basis. N.J.S.A. 13:1E-I09(a). The escrow fund is to be utilized for properly and completely closing *103 the landfill, and any monies remaining thereafter revert to the contingency fund. N.J.S.A. 13:1E-110(b). As is the case with the Recycling Act, any additional municipal expenditures for the collection or disposal of solid waste required by the Closure Act are exempt from the Local Government Cap Law. N.J.S.A. 13:1E-113.
Contentions
The acts provide that “every owner or operator of a sanitary landfill” must pay the tax. Bernards Township contends that it is not liable for taxes under the acts because the acts do not expressly state that municipalities are included. The township urges that examination of the purpose of the Closure Act reveals that the act is not aimed at local government. They argue that while the public must be protected against the risk that a landfill operator will disappear, leaving in his wake a hazardous dumpsite and no funds with which to clean it up, municipalities by their nature cannot “disappear” and have ongoing sources of revenue.
The township further urges that the Recycling Act could not have been intended to levy a tax on the same municipalities that would be eligible for recycling grants because that would merely be a redistribution of funds, rather than the infusion of new funds sought by the act. Since the township charges no fees for use of its facilities, and uses general tax revenues to cover all costs connected with the landfill and recycling program, it argues that its property owners should not be taxed twice for the same purpose.
The State’s position is that the statutes draw no distinction between municipal owners or operators of landfills and private owners or operators. Pointing to the specific provisions that exempt municipal expenditures from the strictures of the cap law, the State argues that the Legislature clearly contemplated including municipalities in the category of taxpayers under the act. The State maintains that the Legislature was undoubtedly aware when it passed the acts that many sanitary landfills in New Jersey are operated by local governments, and there is no *104 reason to infer that the Legislature intended to not tax the local government operators of those sites.
I find that the argument of the taxpayer is not persuasive, and that the Legislature intended to tax Bernards Township as an owner and operator of a sanitary landfill.
Discussion
The statement of legislative findings in the Recycling Act recites that “The Legislature finds that New Jersey must continue to seek solutions to its energy, environmental and economic problems____ The Legislature, therefore, declares it to be in the energy, environmental and economic interests of the State of New Jersey to implement a comprehensive statewide recycling plan.” N.J.S.A. 13:lE-93.
The Recycling Act implements the recommendations and plans contained in a report entitled “Recycling in the 1980’s,” prepared for the Governor in September 1980 by the New Jersey State Advisory Committee on Recycling. The report recommended that the State provide economic incentives to local governments, business and industry in order to create a general system of recycling on a broad scale throughout the State. A tax on landfill operators and owners would provide the bulk of the funds needed to implement the act. All landfills would be subject to the tax, and all municipalities that create recycling programs would be potential beneficiaries of the act. No exception was set forth in the report, and there is none in the act, for landfills operated free of charge to users or landfills operated by governmental rather than private entities.
The report presented data showing that recycling programs produce substantial economic benefits to municipalities. N.J.' State Advisory Committee on Recycling, “Recycling in the 1980’s,” at 23. The committee therefore recommended that 45% of the funds collected from the recycling tax be used to provide grants to municipalities that have instituted recycling programs. This recommendation was incorporated into the act at N.J.S.A. 13:lE-96(b)(l).
*105 The fact that Bernards Township has an ongoing recycling program and a closure plan already approved by the Department of Environmental Protection does not entitle the township to exemption from the recycling tax because neither the study upon which the Recycling Act was based nor the acts provided for such exemption.
The Landfill Closure Act is geared to solving the problem of landfill closure on a statewide basis. The Legislature found that “closure activities can require capital expenditures at a time when revenues collected by sanitary landfill facilities are minimal or non-existent,” N.J.S.A. 13:1E-101, and created a type of “insurance fund” designed to prevent problems which might arise because of lack of funds. The problem addressed by the statute may arise from limitations on a municipality’s revenue-raising abilities as well as from the unscrupulousness of a private landfill operator.
“Owner or operator” as used in the Landfill Closure Act is defined as follows: “ ‘Owner or operator’ means and includes, in addition to the usual meaning thereof, every owner of record of any interest in land whereon a sanitary landfill facility is or has been located____” N.J.S.A. 13:1E-I02(b). This language is sufficiently broad to encompass any person or entity, including a municipality, owning any landfill situated in the State. It is common knowledge that many sanitary landfills in New Jersey are owned and operated by local governments. The Legislature was most likely aware of this fact when it imposed the recycling and closure taxes on “the owner or operator of every sanitary landfill facility.” N.J.S.A. 13:lE-95; emphasis supplied.
The Legislature’s intent to exempt must be clearly expressed. The court will not infer an exemption from the absence of specific references to municipalities, because the statutes plainly seek a comprehensive solution to a state-wide problem.
When the Legislature has exempted municipalities from a tax, it has done so in clear language. See, e.g., the Sales and *106 Use Tax Act, N.J.S.A. 54:32B-9(a)(l) (exempting political subdivisions of the State from the sales and use tax); Motor Fuel Tax Act, N.J.S.A. 54:39-65 (exempting sales of fuel to political subdivisions of the State from the motor fuel tax). No such intention to exempt municipalities appears in either the Recycling Act or the Landfill Closure Act.
The New Jersey Supreme Court has reminded us time and again that the interpretation of a statute turns on common sense and the objectives sought to be accomplished by the law. New Jersey Builders, Owners & Managers Assn. v. Blair, 60 N.J. 330, 338, 288 A.2d 855 (1972); Jersey City Chap. Prop. Owners etc. Assn. v. City Council, 55 N.J. 86, 100, 259 A.2d 698 (1969); Dvorkin v. Dover Tp., 29 N.J. 303, 315, 148 A.2d 793 (1959); San-Lan Builders, Inc. v. Baxendale, 28 N.J. 148, 155, 145 A.2d 457 (1958). The spirit and purpose of the law prevail over the specific words or absence of words.
[I]n this quest for the true intention of the law, the letter gives way to the obvious reason and spirit of the expression, and to this end the evident policy and purpose of the act constitute an implied limitation on the sense of general terms and touchstone for the expansion of narrower terms ... The particular terms are to be made responsive to the essential principle of the law. It is not the words, but the internal sense of the act that controls. [San-Lan Builders, Inc., 28 N.J. at 155, 145 A.2d 457].
Bernards Township cites the cases of Township of Hanover v. Town of Morristown, 4 N.J.Super. 22, 66 A.2d 187 (App.Div.1949), and Walter Reade, Inc. v. Dennis Tp., 36 N.J. 435, 177 A.2d 752 (1962), as support for the proposition that “a local government is not to be taxed in a doubtful case.” In each of those eases the court was called upon to interpret a specific governmental exemption granted with respect to taxes on real property. Neither the subject nor the focus of the inquiry in those cases sheds any light on the task here, namely, whether the court should infer from the absence of an exemption for municipalities that the Legislature intended to exempt municipalities from the recycling and closure taxes.
The township’s claim that imposing the closure tax on a municipality would dilute the effect of the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq., merits but two brief com *107 ments. First, municipal corporations are creatures of state law, and the Legislature has the power to abrogate municipal tort immunity to whatever extent it wishes. Second, it is questionable whether the Landfill Closure Act would have that effect, for it is the fund itself, and not the municipality, that becomes strictly liable for injuries to persons and property. The fund operates the way an insurance fund would; claims would be paid by the fund, not by the operator of the landfill.
The township urges that the cap law exemptions in the acts[3] do not refer to taxes that a municipal landfill operator might pay and therefore are not indicative of a legislative intent to tax municipalities. Rather, the township says, the phrase “additional expenditures for the collection or disposal of solid waste” refers to the increased tariffs the township might have to pay to haulers of solid waste by virtue of the provisions in the acts permitting landfill operators to pass through their taxes in the form of a surcharge on tariffs. See N.J.S.A. 13:lE-98, -112. Thus, the argument concludes, the court cannot look to the cap law exemption provisions as proof that the Legislature intended to tax municipalities.
Taxes imposed by the State on the operation of a landfill may be “additional expenditures for the collection or disposal of solid waste” intended by the Legislature to be exempt from the cap law, N.J.S.A. 13:1E~99. Since the taxes are paid both directly by operators of landfills and indirectly by users, and since municipalities are both operators and users of sanitary landfills, the township’s argument that the wording of the statute shows that the Legislature intended to exempt municipalities is not persuasive.
In conclusion, the Legislature created a scheme involving citizens, private enterprise and state and local government in an effort to remedy the twin problems of an overabundance of solid waste and the necessity for safe closure of landfill facili *108 ties. Bernards Township’s claimed exemption from inclusion in this plan is clearly at odds with the intention of the Legislature.
Bernards Township’s motion for summary judgment is denied and the Director’s motion for summary judgment is granted. The court retains jurisdiction for the purpose of determining the amount of the tax. In the event the parties cannot agree on the tax due within thirty days of receipt of this opinion, the parties will so inform the court, and the case will be scheduled for trial to determine the tax due.

 N.J.S.A. 54:51A-13 provides that "all complaints seeking review of actions of the Director of the Division of Taxation or any other state agency or officer with respect to any tax matter” may be heard by the Tax Court.

 The Local Government Cap Law imposes restrictions on increases in municipal expenditures.

 N.J.S.A. 13:1E-99 and 13:1K-113, respectively.