KUSKIN, J.T.C.
In this matter, plaintiff challenges assessments of litter control tax in connection with its sales of hardcover and softcover books to wholesalers, distributors, and retailers. Defendant, Director of the New Jersey Division of Taxation (Director), imposed the assessments pursuant to N.J.S.A. 13:1E-99.1 for each of tax years 1993 through 2000. As of March 15, 2005, the assessments, including penalties and interest, totaled $478,330.27. The parties have submitted a stipulation of facts, and both plaintiff and the Director have moved for summary judgment. For the reasons set forth below, I hold that plaintiff is not liable for the taxes, penalties and interest assessed and, therefore, grant plaintiff’s motion for summary judgment and deny the Director’s motion.
The following facts are either contained in the stipulation of facts or are not in dispute. Plaintiff is a New York corporation authorized to do business in New Jersey and, during the years under appeal, was engaged in the business of publishing and selling hardcover and softcover books. Plaintiff designed the templates (containing text, headings, and graphics) for each book it published, and selected the materials for the book covers and, for hardcover books, the materials for the book jackets. Plaintiff *488 then provided the book text and cover designs to one of several third-party printing and binding companies with which it contracted. Plaintiff chose the paper on which a book was to be printed from standard papers stocked by the printer, and chose the binding to be used from a selection made available either by a supplier of binding materials or by the printer. The printer cut the paper stock, printed the quantity of books ordered by plaintiff, bound the books with a paper or hard cover, and wrapped hardcover books with a book jacket. The printer provided corrugated cardboard boxes in which it packed the books and shipped them either to one of plaintiffs distribution centers or directly to plaintiffs customers, some of which were located in New Jersey. A portion of the customers were retailers but most were wholesalers or distributors who purchased books in large quantities.
To the extent the books did not fill a cardboard box, the printer placed bubble wrap or other filler in the box to protect the books from damage caused by jostling during shipping. Plaintiffs distribution centers placed shipping labels on unopened boxes received from a printer and shipped the boxes to plaintiffs customers. On some occasions, plaintiff would repack books in smaller cardboard boxes at its distribution centers to fill orders for lesser quantities than contained in the cardboard boxes shipped by the printers.
The cardboard boxes in which plaintiffs books were shipped, either by the printer or by plaintiff, and the packing material used to protect the books, were not delivered to the ultimate consumers of the books but were emptied and recycled or otherwise disposed of by the wholesalers, distributors, and retailers.
During the years in question, plaintiff and the printers with which plaintiff contracted shipped books only to wholesalers, distributors, and retailers, and not to the ultimate consumers. In the ordinary course, plaintiffs customers did not sell plaintiffs books to individual consumers by the carton.
The litter control tax for the years at issue in this appeal was imposed pursuant to N.J.S.A. 13:1E-99.1(a) (“Section 99.1(a)”) (repealed by L. 2002, c. 128, § 12), which provided in pertinent part as follows:
*489 There is levied upon each person engaged in business in the State as a manufacturer, wholesaler, or distributor of litter-generating products a tax of 3/100 of 1% (.0003) on sales of those products within the State____A sale by a wholesaler or distributor to another wholesaler or distributor, a sale by a company to another company owned wholly by the same individuals or companies, or a sale by a wholesaler or disti’ibutor owned cooperatively by retailers to those retailers is not subject to tax under this Act.
Certain of the terms used in Section 99.1(a) were defined in N.J.S.A. 13:1E-94 (also repealed by L. 2002, c. 128, § 12).[1] The definition of “litter-generating products” was as follows:
“Litter-generating products” means the following specific goods which are produced, distributed, or purchased in disposable containers, packages or wrappings; or which are not usually sold in packages, containers, or wrappings but which are commonly discarded in public places; or which are of an unsightly or unsanitary nature, commonly thrown, dropped, discarded, placed, or deposited by a person on public property, or on private property not owned by him....
[N.J.S.A. 13:1E-94(e).]
The statute then enumerated fifteen categories of “specific goods” including, as category (12), “paper products and household paper.” [2] The statute defined the phrases “sold within the State” or “sales within the State” as meaning:
[A]ll sales of retailers engaged in business within the State and, in the case of manufacturers, wholesalers, and distributors, all sales of products for use and consumption within the State. It shall be presumed that all sales of manufacturers, wholesalers and distributors sold within the State are for use and consumption within the State unless the taxpayer shows that the products are shipped out of State for out-of-State use....
[N.J.S.A. 13:1E-94(j).]
*490 In enacting the litter control tax in 1985 the Legislature added the following finding to N.J.S.A. 13:lE-93 (repealed by L. 2002, c. 128, § 12 and replaced by N.J.S.A. 13:1E-214, L. 2002, c. 128, § 2):
The Legislature finds that an uncluttered landscape is among the most priceless heritages which New Jersey can bequeath to posterity; that it is the duty of government to promote and encourage a clean and safe environment; that the proliferation and accumulation of carelessly discarded litter may pose a threat to the public health and safety; that the litter problem is especially serious in a State as densely populated and heavily traveled as New Jersey; and that unseemly litter has an adverse economic effect on New Jersey by making the State less attractive to tourists and new industry and residents.
[N.J.S.A. 13:1E-93.]
Plaintiff contends that it is not subject to litter control tax for the following reasons:
A. the books it sold were not “paper products” as the term was used in N.J.S.A 13:1E — 94(e) (12), and, therefore, the books were not litter-generating products within the meaning of Section 99.1(a);
B. plaintiff was a wholesaler, and, therefore, under the express provisions of Section 99.1(a), its sales to other wholesalers or distributors were not subject to tax;
C. plaintiffs books were not shipped in “disposable containers, packages or wrappings” within the meaning of N.J.S.A 13:1E-94(e); and
D. certain of plaintiffs sales involved shipments of books out-of-state for out-of-state use, and, therefore, those sales were not subject to tax under N.J.S.A 13:1E-94(j) and Section 99.1(a).
The Director responds that the term “paper products” as used in N.J.S.A. 13:lE-94(e)(12) encompassed plaintiffs books because the books were made wholly or primarily of paper. The Director further contends that, even though plaintiff did not perform the printing and binding of the books, it was a manufacturer because of its extensive participation in the preparation of the books. Because plaintiff has stipulated that the cardboard boxes in which its books were shipped were “disposed of,” the Director asserts that the cardboard boxes constituted disposable containers or packages under N.J.S.A. 13:lE-94(e), and, even in the absence of the stipulation, would constitute disposable containers or packages under that statute. Finally, the Director asserts that plaintiff has failed to establish that any of its books were shipped out-of-state for use out-of-state.
*491 Under the definition of litter-generating products in N.J.S.A. 13:1E-94(e), the fifteen categories of “specific goods” are deemed litter-generating only if they satisfy one of three tests, namely: (1) they are “produced, distributed, or purchased in disposable containers, packages or wrappings,” or (2) they “are not usually sold in packages, containers, or wrappings but ... are commonly discarded in public places”, or (3) they are of an “unsightly or unsanitary nature, commonly thrown, dropped, discarded, placed, or deposited by a person on public property or, on private property not owned by him.” Ibid. The Director acknowledges that plaintiffs books did not satisfy tests (2) or (3). Consequently, in imposing litter control tax, the Director contends that the books were litter-generating paper products under test (1).
The Director’s position as to the meaning of the terminology of N.J.S.A. 13:1E-94 and -99.1 is consistent with regulations he promulgated. Thus, the regulations defined the phrase “paper products and household paper” as used in N.J.S.A. 13:1E-94(e)(12) as meaning “all items of tangible personal property made or substantially derived from paper including all paper products for home or other personal use but does not include newspapers and magazines.” N.J.A.C. 18:38 — 3.1(b)(12), adopted January 20, 1988. See 20 N.J.R. 408 (February 16,1988). A “magazine” was defined as “a printed publication issued periodically, at least four times a year ... usually bound with a paper cover and contain[ing] many and miscellaneous articles on a variety of topics.” N.J.A.C. 18:38-3.1(b)(12)(ii). The regulations defined a “manufacturer” as “any person who engages in the making, fabricating or processing of any litter-generating product regardless of whether the manufacturing activity occurs within or outside New Jersey.” N.J.A.C. 18:38-1.3. The definition of a wholesaler was:
[A]ny person who sells litter-generating products for the purpose of resale to another wholesaler or a retailer or both, but does not include manufacturers. The “wholesaler or distributor” designation is limited to those persons primarily engaged in the business of making wholesale sales. “Primarily” means that more than 50 percent of gross receipts from all sales are wholesale sales.
[N.J.A.C. 18:38-1.3.]
After the foregoing regulations were proposed, but before adoption by the Director, representatives of the New Jersey Division of *492 Taxation and representatives of the graphic arts industry met to discuss the definition of “paper products and household paper.” The Division’s response to concerns expressed by the industry as to the breadth of the proposed definition included a discussion of the history of the litter control tax and a conclusion that the Legislature intended to adopt an expansive definition of paper products.
It is recognized that the Legislature, when compiling this list of litter generating product categories for the Clean Communities and Recycling Act, incorporated most, if not all, of the product categories of litter tax laws enacted in two other states____
Although the Legislature chose to include most if not all of the categories of both the Washington State and Virginia lav's, a notable exception is the exclusion of the “Newspaper and magazine” category. In its place, the Legislature substituted the category “Newsprint and magazine paper stock.” The Division of Taxation interprets this legislative substitution as providing a specific exclusion for sales of newspapers and magazines.
The Division also takes note that the New Jersey Legislature could have included in the litter generating product list the much more narrow “Household paper and paper product” category of Washington State which restricts the paper product category to paper products “for home or other personal use.” The Legislature instead elected to incorporate the much broader category of Virginia’s law “Paper products and household paper,” which is defined by Virginia regulations to mean “materials or substances made into sheets or leaves from organic or synthetic fibrous material, including products or articles made from sheets or leaves.” Virginia Regulation 20.10-201.1. The Division must assume that the Legislature, in opting for Virginia’s version of a “paper products” category, intended a very broad interpretation of this litter generating product category, limited only by the newspaper and magazine exclusions for the reasons previously mentioned [(that is, the substitution in N.J.S.A. 13:1E-94(e)(10) of “newsprint and magazine paper stock” for the “newspapers and magazines” category included in the Washington and Virginia statutes)].[3]
*493 Thus, sales of items such as advertising, leaflets or flyers, brochures, greeting cards, posters, letterhead, books, booklets, catalogs, annual reports, calendars, post cards, programs, envelopes, business forms, labels, bookeovers, etc. all may result in taxable litter control tax receipts.
[ 20 N.J.R. 408 (February 16,1988) (emphasis added). ]
I will address first the issue of whether plaintiffs books constitute “paper products” under N.J.S.A. 13:1E-94(e)(12). The decisional law interpreting N.J.S.A 13:lE-94 and -99.1 is limited to three opinions of the Tax Court: United Jersey Bank v. Director, Div. of Taxation, 12 N.J.Tax 516 (1992), Royal Food Distributors, Inc. v. Director, Div. of Taxation, 15 N.J.Tax 60 (1995), and Feesers, Inc. v. Director, Div. of Taxation, 20 N.J.Tax 201 (2002). Of these, the United Jersey Bank opinion is particularly relevant because it alone deals with the “paper products” terminology of the statute. The other two opinions relate to litter control tax imposed on wholesale distributors of food products.
In United Jersey Bank, supra, the issue was whether the plaintiff bank’s sales of preprinted personal checks and deposit slips constituted retail sales of litter-generating products. The Director acknowledged that the checks and deposit slips were not “commonly discarded in public places” or “of an unsightly or unsanitary nature, commonly thrown, dropped, discarded, placed, or deposited” on public or private property, but contended that the checks and deposit slips were litter-generating paper products because they were “produced, distributed or purchased in disposable containers, packages or wrappings.” N.J.S.A. 13:1E-94(e). The checks and deposit slips were printed by a third-party printer with which the bank contracted. The printer packaged the checks and deposit slips in thin cardboard mailing boxes and mailed them to the bank’s customers pursuant to its instructions. The printer *494 billed the bank and it, in turn, charged its customers a fee for the checks and deposit slips.
In holding that the checks and deposit slips were litter-generating “paper products” under N.J.S.A. 13:1E-94(e)(12), Judge Andrew concluded that the statutory language was clear, obviating any need to determine legislative intent, and that the language should be read literally. United Jersey Bank v. Director, Div. of Taxation, supra, 12 N.J. Tax at 522-25. He also relied on the “common understanding” of the words “checks” and “deposit slips” as constituting paper products, and on the Director’s definition of paper products in N.J.A.C. 18:38 — 3.1(b)(12) (quoted above). Id. at 529. In Royal Food Distributors Inc. v. Director, Div. of Taxation, supra, 15 N.J. Tax 60, Judge Andrew reiterated his conclusion that a literal reading of the language of the litter control tax statutes was appropriate. Judge Bianco adopted the same approach in Feesers Inc. v. Director, Div. of Taxation, supra, 20 N.J. Tax 201, 206.
Judge Andrew employed the principle of statutory construction that, when a statute is clear and unambiguous on its face, a court should not engage in interpretation based on legislative history or other indicators of legislative intent other than the statutory language itself. United Jersey Bank, supra, 12 N.J. Tax at 524, (citing cases prohibiting interpretation of “clear and unambiguous” statutory language). Although he acknowledged that reading a statute literally would be inappropriate if that reading would lead to an unreasonable or absurd result or a result in conflict with the underlying legislative purpose, id. at 525, Judge Andrew elected not to address an argument advanced by United Jersey Bank that a literal reading of the term “paper products” would produce an absurd result in connection with a work of art. He commented as follows with respect to this argument:
To demonstrate an unreasonable result which could occur under the Director’s logic, plaintiff conjures up and offers to this court an example of a situation involving a Picasso drawing which would supposedly produce a taxable event under the Director’s interpretation of the statute. The example is not helpful nor relevant because, under the statute, it is not certain whether the example offered would be determined to be taxable by the Director. The example simply does not assist or advance the required analysis.
*495 [Id at 528 n. 3.]
I agree with Judge Andrew’s uncertainty as to whether the Director would construe a Picasso drawing as a “paper product” under N.J.S.A. 13:1E-94(e)(12). I respectfully disagree, however, with his dismissal of the relevance of the example. I also respectfully disagree with his exclusive reliance on the principle of statutory construction precluding examination of legislative intent and purpose when statutory language is “clear on its face.” United Jersey Bank, supra, 12 N.J.Tax at 523. As with most principles of statutory construction, there are countervailing considerations which a court may also take into account.[4] Thus the Appellate Division recently stated:
As Chief Justice Weintraub stated many years ago, our obligation is “to give effect to the obvious purpose of the Legislature, and to that end ‘words used may be expanded or limited according to the manifest reason and obvious purpose of the law. The spirit of the legislative direction prevails over the literal sense of the terms.’ ” New Capitol Bar & Grill Corp. v. Div. of Employment Sec., 25 N.J. 155, 160, 135 A.2d 465 (1957) (quoting Alexander v. New Jersey Power & Light Co., 21 N.J. 373, 378, 122 A.2d 339 (1956)).
[Marshall v. Klebanov, 378 N.J.Super. 371, 379, 875 A.2d 1035 (App.Div.2005).]
Under a literal reading of the term “paper products,” as now advocated by the Director, the Picasso drawing, if shipped in a disposable cardboard box, would constitute a litter-generating product subject to litter control tax. The same logic and reading of “paper products” would define as “litter-generating products” lithographs, photographs, paper sculptures, (for example, origami), and other works of art on, or primarily consisting of, paper. I conclude that such a result would be unreasonable, absurd, and in conflict with the purpose of the litter control tax as set forth in the legislative findings in connection -with the adoption of the tax. These findings, as quoted above, emphasized concerns as to “the proliferation and accumulation of carelessly discarded litter.” N.J.S.A. 13:1E-93.
*496 That a literal reading of “paper products” as used in N.J.S.A. 13:lE-94(e)(12) does not accord with the legislative intent and purpose is suggested by the language of the statute as interpreted by the Director. The Legislature deleted the “newspapers and magazines” category from the definition of litter-generating products (which category appears in the litter control tax statutes of both Virginia, Va.Code Ann. § 58.1-1708(7) and Washington, Wash. Rev.Code § 82.19.020(7)) and substituted “newsprint and magazine paper stock.” N.J.S.A. 13:1E-94(e)(10). The Director has interpreted the substitution as excluding newspapers and magazines from the “paper products” category, N.J.A.C. 18:38— 3.11(b)(12), even though “newspapers [and] magazines” are included in the definition of “litter” in N.J.S.A. 13:1E-94(d). The Director, therefore, has recognized that the term “paper products” should not be read literally because a literal reading necessarily would include newspapers and magazines.
Based on the preceding discussion, I conclude that the term “paper products” in N.J.S.A 13:1E-94(e)(12) should not be read literally. This conclusion, however, does not resolve the issue before me. I still must determine whether plaintiffs books are “paper products.” If the books have more of the characteristics of art works or magazines than the characteristics of photocopy paper or cheeks and deposit slips, they do not constitute litter-generating paper products. If, however, the books have more of the characteristics of photocopy paper or checks and deposit slips than the characteristics of art work or magazines, they constitute litter-generating paper products.
Paper is the primary and predominant physical component of a Picasso drawing, a magazine, and plaintiffs books, but the paper is not the primary and predominant basis for the value of any of these products. The value of the Picasso drawing is the drawing itself, not the surface on which it is placed. The value of a magazine and a book is the printed matter on the magazine’s or book’s pages and not the pages themselves. The physical properties of books and the physical properties of magazines in some instances are virtually identical. Certain magazines are published on very high quality paper with covers of a quality similar to the *497 covers of softcover books, and the contents of magazines are sometimes similar to books. For example, The New Yorker magazine periodically publishes issues devoted to fictional short stories. See, for example, The New Yorker, June 13 and 20, 2005 and June 14 and 21, 2004. The distinction between these issues of the magazine and soft cover books of fictional short stories is, for practical purposes, nonexistent. The Director, however, treats magazines as excluded from the paper products category in N.J.S.A. 13:1E-94(e)(12) and seeks to include plaintiffs softcover books in the category.
The Picasso drawing, magazines, and plaintiffs books, although sharing the characteristics described in the preceding paragraph, are distinguishable from paper products such as photocopy paper and the checks and deposit slips at issue in United Jersey Bank, supra, 12 N.J.Tax 516. The utility of the photocopy paper is its use in the photocopying process. Similarly, the utility of checks and deposit slips is in the physical use of the paper for making payments or bank deposits. A party acquiring a work of art on paper, a magazine, or a book does not intend to use the paper as such, and the utility of the paper is only as a means of containing the artwork or text constituting the real value of the product. Cf. Metpath, Inc. v. Director, Div. of Taxation, 96 N.J. 147, 154, 474 A.2d 1065 (1984) (holding that, for sales tax purposes, the sale of a laboratory report is a sale of information and not a sale of the paper on which the report is printed); Spencer Gifts, Inc. v. Director, Div. of Taxation, 3 N.J.Tax 482, 182 N.J.Super. 179, 440 A.2d 104 (1981) (holding that, for sales tax purposes, payments for computer tapes containing mailing lists are payments for the information on the tapes and not for the tapes as such).
I conclude that books are not “paper products” under N.J.S.A. 13:1E-94(e)(12) and, therefore, are not subject to litter control tax under Section 99.1(a). My conclusion results from the foregoing analysis and derives additional support from the fact that some books are not printed on paper. Books for infants and young children are sometimes printed on plastic or cloth. These books, if shipped in disposable cardboard boxes, would have the same litter-generating qualities as books printed on paper. However, *498 because they are not made primarily from paper, they would be excluded from the definition of litter-generating products in N.J.S.A. 13:1E-94(e)(12). For purposes of the legislative concern as to the proliferation of litter expressed in N.J.S.A. 13E:1E-93, no distinction exists between books printed on plastic and shipped in cardboard boxes, and books printed on paper and shipped in cardboard boxes.
I recognize that the distinction I have drawn between the value of the printed material on the page of a book and the use of the page in itself might result in the inclusion within the term “paper products” of items such as bound, hardcover journals or diaries containing only blank paper pages. This possible result does not detract from the validity of the distinction between paper products where the paper itself is the object of the sale or purchase, and books where the object of the sale is the content of the book and not the paper on which it is printed. The paper, binding, and book jacket contribute to the overall value of a book and its sales price, but these contributions are secondary to the main function of the paper, binding, and book jacket, which is to contain the text or other information sought by the book purchaser.
Because I have concluded that, for the years under appeal, the books published by plaintiff were not subject to tax under Section 99.1(a), I need not address the other bases for appeal asserted by plaintiff. For purposes of completeness, however, I will do so. See Busik v. Levine, 63 N.J. 351, 364, 307 A.2d 571, appeal dismissed, 414 U.S. 1106, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973) (stating that a court “may deliberately decide issues which need not be decided when it believes that course is warranted”).
As its second basis for appeal, plaintiff contends that it was a wholesaler within the meaning of N.J.S.A. 13:lE-99.1(a) and, therefore, its sales to wholesalers and distributors were not subject to litter control tax under the express provisions of that statute. I reject plaintiffs contention. The manufacturing of a book involves a number of component steps including not only the physical printing and binding itself, but also the selection of the paper, the determination of the layout and formatting of the book, *499 the selection and layout of graphics, the selection of the print type and ink, the design and selection of the book cover, the selection of the paper and design of the book jacket, and the compilation, editing, and preparation of the book manuscript. The physical printing and binding of plaintiffs books took place on paper selected by plaintiff, in a format selected by plaintiff, with graphics selected by plaintiff, using a print style selected by plaintiff. Plaintiff, therefore, was very much a participant in the process of the physical preparation of the book. As such, plaintiff fit the definition of a manufacturer as set forth in the Director’s regulations, specifically N.J.A.C. 18:38-1.3, defining a manufacturer as any person who “engages in the making, fabricating or processing of any litter-generating product.” Consequently, if its books were litter-generating products, plaintiff would be a manufacturer and would be subject to litter control tax.
I reject as without merit plaintiffs argument that it could not be a manufacturer because it did not manufacture the cardboard boxes in which its books were shipped. A manufacturer under Section 99.1(a) is defined with reference to the litter-generating products comprising the fifteen categories set forth in N.J.S.A. 13:1E-94(e), and not with reference to the “disposable containers, packages or wrapping” in which the litter-generating products are “produced, distributed, or purchased.” Ibid. The Director’s definition of a manufacturer as “a person who engages in the making, fabricating, or processing of any litter-generating product,” N.J.A.C. 18:38-13, conforms with the statutory language.
My conclusion that, for the years under appeal, plaintiff was a manufacturer is consistent with the discussion of book manufacturing in McGraw-Hill Inc. v. State, Department of the Treasury, 9 N.J.Tax 372 (1987). There, the issue was whether McGraw-Hill, a book publisher, was subject to use tax under N.J.S.A. 54:32B-6 on the cost of books donated by it to charitable organizations. McGraw-Hill stipulated that it was a manufacturer of the books. Notwithstanding this stipulation, Judge Lasser made a specific finding as to the company’s status as a manufacturer.
The parties stipulated that taxpayer is a manufacturer. Taxpayer’s counsel explained that the editorial staff prepares the manuscript which is transferred to *500 film and then furnished to the printer with the paper. The book is printed and bound by a printer, or printed and separately bound by a bindery and then delivered to taxpayer’s distribution center in Hightstown. Viewing the totality of the creation of the book as the manufacturing of a product, I conclude that taxpayer is the manufacturer of the book. It assembles the material (manuscript, paper, etc.), produces the film and subcontracts the printing and binding.
[Id. at 385 (footnote omitted).]
See also Press Printing Co. v. State Bd. of Assessors, 51 N.J.L. 75, 77, 16 A. 173 (Sup.Ct.1888) (holding that for purposes of exemption from a state license fee or tax imposed on corporate capital stock, the plaintiff was a manufacturer “so far as concerns its business of printing and publishing books” but was not a manufacturer “with respect to its business of printing and publishing a newspaper.”)
The Massachusetts Supreme Judicial Court reached a similar conclusion as to a book publisher’s status as a manufacturer in Commissioner of Revenue v. Houghton Mifflin Company, 423 Mass. 42, 666 N.E.2d 491 (1996). There, Houghton Mifflin, a book publisher, claimed that it qualified as a manufacturer for investment tax credit purposes. The Court held as follows:
Houghton transforms ideas, art, information, and photographs, by application of human knowledge, intelligence, and skill, into computer disks, ready for use by independent printers, containing an immense amount of information in a highly organized form— The work Houghton does approaches, to the extent humanly possible, creation ex nihilo; it is quite different from the mere manipulation of information and electric currents that we discussed [in other decisions]. We agree with the board’s conclusion that Houghton’s operations “produce a significant degree of change and refinement to the materials involved and that these are essential integral steps in the manufacturer of conventional books.”
[Id. at 495-96 (citations omitted).]
But see Directory Publishing Co., Inc. v. City of Pittsburgh, 205 Pa.Super. 423, 211 A.2d 509 (1965) (holding that the publisher of a magazine printed by an independent contractor was not a manufacturer under city licensing ordinances); H.M. Rowe Co. v. Beck, 149 Md. 251, 131 A. 509, 510 (1925) (holding that a book publisher that contracted for printing of its books was not a manufacturer under a city ordinance granting a tax exemption to “persons, firms and corporations actually engaged in manufacturing” within the city.)
*501 A third basis for plaintiffs appeal is that the cardboard boxes used to ship its books from the printer to plaintiffs distribution centers or to wholesalers, distributors, or retailers were not disposable containers within the meaning of N.J.S.A. 13:lE-94(e), even though they were, as set forth in the stipulation of facts, “disposed of.” I reject this contention. That the cardboard boxes did not reach the ultimate consumer of plaintiffs books and may have been recycled by a wholesaler, distributor, or retailer did not make them any less disposable than the boxes used to package the checks and deposit slips at issue in United Jersey Bank. Consequently, I conclude that plaintiff can not avoid liability for litter control tax on the grounds that the cardboard boxes used to ship its books were not disposable packaging or containers.
Finally, plaintiff asserts that some of its books were shipped out-of-state for out-of-state use. Plaintiff submitted a certification which identified specifically the sales to which it refers. The Director neither submitted any contrary evidence nor raised any doubt as to the accuracy of plaintiffs submissions. Accordingly, if I had concluded that litter control tax was due with respect to plaintiffs sales of books, I would have excluded the sales which plaintiff proved were shipped out-of-state for out-of-state use.
For the reasons set forth above, I grant plaintiffs motion for summary judgment and deny defendant’s motion.

 The litter control tax imposed by Section 99.1(a) has been replaced by a litter control fee imposed under N.J.S.A. 13:1E-216, enacted as L. 2002, c. 128, § 4, effective December 20, 2002. The definitional provisions in NJ.S.A. 13:1E-94 have been replaced by similar provisions in N.J.S.A. 13:1E-215, enacted as L. 2002, c. 128 § 3, effective December 20, 2002.

 The other categories were the following: (1) beer and other malt beverages; (2) cigarettes and tobacco products; (3) cleaning agents and toiletries; (4) distilled spirits; (5) food for human or pet consumption; (6) glass containers sold as such; (7) groceries; (8) metal containers sold as such; (9) motor vehicle tires; (10) newsprint and magazine paper stock; (11) drugstore sundry products, excluding prescription or non-prescription drugs; (13) plastic or fiber containers made of synthetic material and sold as such, but excluding certain re-usable containers; (14) soft drinks and carbonated waters; and (15) wine.

 The Division’s assumption, based on the Virginia and Washington statutes is not indisputably correct. The administrative definitions, currently codified at 23 Va. Admin. Code § 10-360-10(B)(4) (2005), of the fifteen categories of specific goods set forth in the Virginia statute, Va.Code Ann. § 58.1-1708, use the adjective "any," "all," and "every" with respect to each category except “paper products and household paper.” The omission of these adjectives from the definition of "paper products and household paper" could be read to suggest the inappropriateness of an expansive reading of this category. The Washington statute set forth an express purpose to allocate a portion of the cost of litter control to "those industries manufacturing and/or selling products and the packages, wrappings, or containers thereof which are reasonably related to the litter problem within this state.” 1971 Wash. Laws sec. 14(2). Washington not only used the “narrow” category of "household paper and paper products” but *493 also designated "newspapers and magazines" as litter-generating products. This seems to reflect the conclusion of the Washington legislature (ignored by the Director) that some products made of paper, such as books, are not contributors to the "litter problem." See also Neb.Rev.Stat. § 81-1560 (1943) defining, as one category of "products which directly contribute to litter," "(6) household paper and paper products, excluding magazines, periodicals, newspapers, and literary works."

 Professor Karl Llewellyn has identified twenty-eight canons of statutory construction and their respective direct opposites. Karl N. Llewellyn, Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes Are To Be Construed, 3 Vand. L.Rev. 395 (1950).