NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

-------------------------------------------------x

CARGILL MEAT SOLUTIONS,    :    TAX COURT OF NEW JERSEY
CORP.,    :

   :    DOCKET NO:    008146-2018

Plaintiff,    :

   :

v.    :

   :

DIRECTOR, DIVISION OF    :
TAXATION,    :

   :

Defendant.    :

-------------------------------------------------x

> Approved for Publication
> In the New Jersey
> Tax Court Reports

Decided: December 15, 2021.

Kyle O. Sollie for plaintiff (Reed Smith LLP, attorneys; Kylie O. Sollie and Matthew L. Setzer on the brief).

Joseph A. Palumbo, Deputy Attorney General, for defendant (Andrew J. Bruck, Acting Attorney General of New Jersey, attorney).

CIMINO, J.T.C.

Plaintiff, Cargill Meat Solutions Corp. (Cargill), asserts that it is not subject to the New Jersey litter fee imposed by the Clean Communities and Recycling Grant Act, N.J.S.A. 13:1E-213 to 223. In particular, Cargill asserts that it is a wholesaler and not a manufacturer for purposes of the Act. Since Cargill's sales are generally

*

to other wholesalers, it claims that it is exempt from the fee under the wholesaler-to-wholesaler exemption provided by the Act. N.J.S.A. 13:1E-216(a). The defendant, the Director of the Division of Taxation (Director), asserts that Cargill is a manufacturer for purposes of the litter fee. For the reasons set forth in greater length herein, the court determines that Cargill is a manufacturer.

## I. STATEMENT OF FACTS

Cargill processes and manufactures meat products at various locations around the country. None of these locations are in New Jersey. The meat products are then packaged in Styrofoam and plastic wrappers and shipped to various locations including Cargill's 26,000 square foot freezer and cooler in Swedesboro, New Jersey. The products in the Swedesboro meat locker are then sold primarily to wholesalers, with a few sales to retailers.[1]

Originally, Cargill filed litter fee returns for 2014 and 2015, reporting gross sales in New Jersey of $466,561,978 and $509,985,131, respectively. Cargill asserts that sales to wholesalers are not subject to the fee. With sales directly to retailers of only $1,276,738 in 2014 and $654,330 in 2015, Cargill remitted a litter fee of $383 for 2014 and $196 for 2015. The Director issued an assessment indicating that the sales to wholesalers should have been included and increased the fee by $160,348.92

---

[1] Approximately 99.8% of sales are to wholesalers and 0.2% to retailers.

for 2014 and $155,389.11 for 2015.[2]  Cargill protested this assessment to the Conference and Appeals Branch of the Division of Taxation.  After the protest, the receipts were adjusted to $535,773,069 for 2014 and $475,275,423 for 2015.  This resulted in an assessment of $160,348.92 for 2014 and $142,386.63 for 2015.  Cargill then filed a complaint with this court.

## II.    LEGAL CONCLUSIONS

Our Supreme Court has indicated that summary judgment provides a prompt, business-like and appropriate method of disposing of litigation in which material facts are not in dispute.  Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 530 (1995).  Cargill has moved for summary judgment and the Director has cross-moved. Since there are not any material facts in dispute, the matter is ripe for summary judgment.

Since 1986, New Jersey has imposed a litter-fee upon sellers of "litter-generating products."[3]  N.J.S.A. 13:1E-216.  N.J.S.A. 13:1E-99.1 (sunset Dec. 31, 2000).  L. 1985, c. 533 (original Act).  These litter-generating products include food which is "produced, distributed, or purchased in disposable containers, packages or

---

[2]  The audit also increased the receipts subject to the fee from $466,561,978 to $535,773,069 for 2014, and from $506,985,131 to $518,617,047 for 2015.

[3]  The prior Act referred to the fee as a tax.  See N.J.S.A. 13:1E-99.1 (sunset Dec. 31, 2000).

wrappings." N.J.S.A. 13:1E-215(e). Cargill does not dispute that the meat products are litter-generating products as defined by the statute.

In describing what was then referred to as a tax, this court noted that "[t]he litter control tax is an excise tax on the privilege of engaging in business in New Jersey as a manufacturer, wholesaler, distributor or retailer of litter-generating products measured by the gross receipts from sales of such products within or into New Jersey." United Jersey Bank v. Dir., Div. of Tax'n, 12 N.J. Tax 516, 519-20 (Tax 1992); Feesers, Inc. v. Dir., Div. of Tax'n, 20 N.J. Tax 201, 204-05 (Tax 2002); see also Royal Food Distributors v. Dir., Div. of Tax'n, 15 N.J. Tax 60, 63 (Tax 1995).

The fee is only imposed upon "sales within the State" which is defined in the case of manufacturers, wholesalers and distributors as "all sales of products for use and consumption within the State." N.J.S.A. 13:1E-215(k). The law presumes that all sales by manufacturers, wholesalers and distributors within the state are for use and consumption within the state unless it is determined by the Director that the products are shipped out of state for out-of-state use. Ibid. Cargill does not dispute that the product at issue was sold and shipped to the Swedesboro meat locker for use and consumption within the state.

For a taxpayer "engaged in business in the State as a manufacturer, wholesaler, or distributor of litter-generating product a user fee of 3/100 of 1%

-4-

(.0003) on sales of those products within the State" is imposed. N.J.S.A. 13:1E-216(a).[4]

The Act includes a wholesaler-to-wholesaler exemption that provides "[a] sale by a wholesaler or distributor to another wholesaler or distributor . . . is not subject to the [litter] fee . . . ." N.J.S.A. 13:1E-216(a). Cargill alleges that it is not a manufacturer, but rather a wholesaler, since its activities in New Jersey consist strictly of wholesale sales, and its manufacturing activities take place outside the state. The Director counters that manufacturers generally sell their products at wholesale to others, the manufacturing does not have to take place in the state, and Cargill's reading of the statute would render the language throughout the statute referring to manufacturers, meaningless.

The original Act imposing a litter tax sunset on December 31, 2000. L. 1995, c. 301, § 1 (setting Dec. 31, 2000 sunset date). A second Act which recast the tax as a fee was enacted in 2002. L. 2002, c. 128. The history of both Acts is set forth in greater detail in the court's prior decision of Cargill Meat Solutions v. Dir., Div. of Tax'n (Cargill I), 31 N.J. Tax 506, 511-15 (Tax 2020). Both Acts repeatedly refer

---

[4] Retailers are only assessed a 2.25/100 of 1% (.000225) on sales. N.J.S.A. 13:1E-216(a). Ostensibly, the retail rate is lower to account for the mark-up from a wholesale to a retail sale. See Charles Bloom & Co. v. Echo Jewelers, 279 N.J. Super. 372, 380 (App. Div. 1995) (recognizing markup from wholesale to retail sale). In addition, retailers are not subject to the fee if they have less than $500,000.00 in annual retail sales. N.J.S.A. 13:1E-216(a).

to manufacturers as being part and parcel of the entities on which the Legislature sought to impose a fee. For example, "'sold within the State' or 'sales within the State' means . . . in the case of manufacturers, wholesalers and distributors, all sales of products for use and consumption within the State." N.J.S.A. 13:1E-215(k) (emphasis added); N.J.S.A. 13:1E-94(j) (sunset Dec. 31, 2000). "It shall be presumed that all sales of manufacturers, wholesalers and distributors sold within the State are for use and consumption within the State unless it is determined by the director that the products are shipped out of State for out-of-State use." Ibid. In addition, the Act plainly provides "[t]here is imposed upon each person engaged in business in the State as a manufacturer, wholesaler, or distributor of litter-generating products a litter fee . . . ." N.J.S.A. 13:1E-216(a) (emphasis added); see also N.J.S.A. 13:1E-99.1(a) (sunset Dec. 31, 2000).

Cargill sells meat products to both wholesalers and retailers. Cargill asserts that sales to wholesalers are exempt from the fee. Setting aside for a moment the issue of whether the manufacturing takes place in New Jersey, Cargill's argument would mean that any manufacturer of products could claim that it is also a wholesaler and invoke the wholesaler-to-wholesaler exemption when it sells products to wholesalers or distributors. Cargill's reading of the statute would render, for all intents and purposes, the word "manufacturer" as found in various parts of the statute as set forth above, a nullity. See, e.g., N.J.S.A. 13:1E-215, 216. It is a basic canon

-6-

in statutory construction that all words provided by the Legislature are to be given meaning and effect. In re Commitment of J.M.B., 197 N.J. 563, 573 (2009).

The flipside of the issue is that if the Legislature did not specifically include manufacturers as being subject to the fee, manufacturers could instead claim they are not wholesalers and thereby not subject to the fee. But that did not happen. The carefully drafted statute swept up manufacturers as entities whose sales would be subject to the fee. The Legislature gave two indications that manufacturers must make a contribution to the various litter control programs through imposition of the fee. First, their sales were included as being subject to the litter fee. Second, their sales were not included as part of an exemption similar to the wholesaler-to-wholesaler exemption.

As stated, the fee is upon the sales of (1) manufacturers; (2) wholesalers/distributors; and (3) retailers. This would typically entail three levels of taxation. The wholesaler-to-wholesaler exemption prevents the pyramiding of taxes as the goods move along the channels of distribution toward the marketplace. See Metpath v. Dir., Div. of Tax'n, 96 N.J. 147, 151 (1984) (quoting Norman Redlich, Sales Taxes and the Resale Exemption in the Manufacture and/or Distrib. of Pers. Prop., 9 Tax L. Rev. 435, 436 (1954)). See also Spring Motor Distribs. v. Ford Motor Co., 98 N.J. 555, 584 (1985) (recognizing distributive chain between a manufacturer, wholesaler, retailer and ultimate buyer).

Pyramiding can be a concern when setting sound tax policy. Michele E. Hendrix & George R. Zodrow, Sales Tax'n of Services: An Economic Perspective, 30 Fla. St. U.L. Rev. 411, 416 (2003) (concerns of both haphazard consumer price differentials and business location decisions, and encouraging inefficient vertical integration). For example, the sales tax is designed to be a single level tax explicitly imposed upon the ultimate consumer. N.J.S.A. 54:32B-12. With the sales tax, a sale for resale is exempt to avoid pyramiding. Metpath, 96 N.J. at 151. See also N.J.S.A. 54:32B-3(b). Here, the litter fee is not upon the ultimate purchaser, but rather designed to be imposed upon three levels of sellers, namely, (1) manufacturers, (2) wholesalers/distributors, and (3) retailers. N.J.S.A. 13:1E-216. Typically, with any one item, there can be only one manufacturer and one retailer. However, there can be one or many wholesalers or distributors on a product's journey from manufacturer to consumer. The wholesaler-to-wholesaler exemption ensures that the fee is only paid once on the wholesale distribution level.

Cargill argues that the fee is a two-level tax, once for a wholesale sale and again for a retail sale. However, if the Legislature wanted to have a two-level tax instead of a three-level tax, it could have easily indicated that sales from manufacturers to wholesalers or distributors are exempt. See, e.g., Feesers, 20 N.J. Tax at 207 (as to the restaurant exemption from the litter tax, if the Legislature

wanted to include wholesalers or distributors which sell to restaurants, the Legislature could have clearly done so).

The practical effect of implementing Cargill's argument is that all manufacturers that sell their products through wholesalers or distributors would claim they are wholesalers and thereby excused from the fee per the wholesaler-to-wholesaler exemption. In other words, accepting Cargill's position would mean that sales of manufacturers, except for sales directly to retailers or the public, would not be subject to the fee.

By not including manufacturers in the wholesaler-to-wholesaler exemption, the structure of the Legislative scheme implicitly recognizes that manufacturers sell to wholesalers. The facts of this case bear that out in that 99.8% of Cargill's sales are to wholesalers. To now allow manufacturers to claim they are wholesalers would gut the intent of the Legislature to impose the fee on the manufacturing level. There is also a recognition by the Legislature that there can be multiple sales at the wholesale distribution level. The wholesaler-to-wholesaler exemption effectively eliminates tax pyramiding while ensuring the fee is paid only once at each of the three levels of sales by manufacturers, wholesalers/distributors and retailers.

Cargill further refines its argument to assert that since its manufacturing activities occur outside of New Jersey, but its sales take place in New Jersey, its activities are limited to those of a wholesaler for purposes of the litter fee. Based

upon Cargill's interpretation, only in-state manufacturers would be subject to the litter fee. As an out-of-state manufacturer, Cargill asserts it would escape the litter fee.

First and foremost, the Legislature did not key the fee to the in-state manufacturing activity of manufacturers, but rather to the sales of manufacturers. This is made plain by the definition of "sold within the State" or "sales within the State" which "means . . . in the case of manufacturers, . . all sales of products for use and consumption within the State." N.J.S.A. 13:1E-215(k). The plain language of the statute is not dependent on the location of the manufacturing, but rather where the product is consumed. If the Legislature intended to only tax products manufactured within the state, it could have and would have explicitly done so.

Moreover, the fee is not imposed upon a manufacturer's products that are shipped outside of the state. Manufacturers, whether they are from in-state or out-of-state and sell products that are consumed out-of-state are not subject to the fee. Ibid. Cargill undisputedly sells products in this state that are consumed in this state. Certainly, manufacturers which sell their products in this state are within the constitutional reach of being subject to taxation. Okla. Tax Comm'n v. Jefferson Lines, 514 U.S. 175, 184 (1995).[5] These manufacturers have availed themselves of

---

[5] The court is not considering and need not address a remote manufacturer who is selling products out-of-state that are ultimately consumed in-state.

the state's resources including its transportation network, communication network and courts to effectuate their sales and ensure that they receive the proceeds they rightfully deserve.[6][7]  Bank of Am. Consumer Card Holdings v. Dir., Div. of Tax'n., 29 N.J. Tax 427, 479 (Tax 2016).

Second, "[s]tatutes cannot be read in a vacuum void of relevant historical and policy considerations and related legislation." Borough of Matawan v. Monmouth Cnty. Bd. of Tax'n, 51 N.J. 291, 299 (1968). Helfrich v. Township of Hamilton, 182 N.J. Super. 365, 370 (App. Div. 1981).  "Regardless of whether the language is plain or whether ambiguities cause us to seek guidance from sources other than the words the Legislature has chosen, our 'primary task is to effectuate the legislative intent in light of the language used and the objects sought to be achieved.'"  Bosland v.

---

[6]  It should be noted here that the court is not faced with a straw sale between a related manufacturer and a related wholesaler.

[7]  The Director also disagrees with the assertion in Cargill's complaint that the fee is unconstitutional because high-value meat products generate the same (or less) litter generating potential as low-value snack products.  The breadth of the litter fee is a policy judgment of the Legislature.  N.J. Republican State Comm. v. Murphy, 243 N.J. 574, 610 (2020).  So long as the legislation does not discriminate against interstate commerce, it will pass constitutional muster.  The court is not faced with the situation where in-state beef manufacturers pay a different litter fee than out-of-state manufacturers when they sell their product in this state.  Rather, the beef manufacturers are treated the same with a fee based upon their actual sales.  Thus, this count of Cargill's complaint fails.

Warnock Dodge, 197 N.J. 543, 554 (2009) (quoting State v. Hoffman, 149 N.J. 564, 578 (1997).

Considering the legislative history, only taxing in-state manufacturers would be a curious result. As explained in Cargill I:

> A litter tax has been regarded as an alternative to a bottle bill requiring a deposit on bottles and cans. In 1983, a bottle bill was tabled by the full Assembly after being released from committee. At the time, the glass industry in southern New Jersey, beverage distributors and supermarkets strongly opposed the measure. The bill had the support of environmental groups. A bottle bill was reintroduced in 1985, but was defeated outright by the Assembly. However, the same day, the Assembly approved a litter tax as part of the Clean Communities and Recycling Act. The Act was signed by the Governor on January 21, 1986.
>
> [Cargill I, 31 N.J. Tax 506, 512 (Tax 2020) (citations omitted).]

The glass industry and labor in southern New Jersey fought a bottle bill over a period of years starting in 1971. Pub. Hearing before A. Comm. on Air & Water Pollution and Pub. Health, A. 2212 68, 84, 87 (Sept. 22, 1971); Pub. Hearing before A. Comm. on Air & Water Pollution and Pub. Health, A. 2212 47 (Sept. 30, 1971). Both industry and labor were concerned that a bottle bill would devastate the glass industry. Ibid. This opposition was sustained in subsequent hearings on this issue. Pub. Hearing before A. Comm. on Com., Indus. & Professions & A. Comm. on Agric. & Env't, A 607, 1191, 1361, 1452, 1528 18, 35, 61 (Nov. 7, 1974); Pub.

-12-

Hearing before A. Energy & Nat. Res. Comm. on Beverage Container Deposit Legis. 24, 28, 1a, 3a, 18a (Jul. 14, 1982); Pub. Hearing before A. Energy & Nat. Res. Comm. on Beverage Container Deposit Legis. 22, 36, 56, 62 (Aug. 25, 1982); Gen. A. F. on the Beverage Container Deposit & Refund Act & Related Issues, A. 1753, 78, 182, 316, 482, 533, 1180, 1237, 1671 23, 92 (Dec. 1, 1983); Pub. Hearing before A. Agric. & Env't Comm., A. 3382, 3398 59, 101x (May 2, 1985).

Certainly, the Legislature was fully aware of the concern expressed by local manufacturing and labor when the bottle bill was defeated and the litter tax was approved on the same day by the Assembly. Considering the actions of the Legislature in rejecting a bottle bill, it is doubtful the Legislature intended to place the local glass industry at a disadvantage by only imposing a litter tax on in-state manufacturing.

In addition, the statement of the Senate Revenue, Finance and Appropriations Committee specifically and separately enumerated the "exemptions and exceptions" to the tax. One of those "exemptions and exceptions" is "[s]ales by wholesalers or distributors to other wholesalers or distributors." Sen. Revenue, Fin. & Appropriations Comm., Statement to A. Comm. Sub. for A. 2003 1 (Jan. 13, 1986). Needless to say, manufacturers are not mentioned as being exempt.

Third, the Director has promulgated regulations dealing with out-of-state manufacturing. For both the current and prior Act, authority was given to the

Director to promulgate regulations to carry out the purposes of the Act. N.J.S.A. 13:1E-216(f)(3), -222(b); N.J.S.A. 13:1E-99.1(g)(3), -99.10 (sunset Dec. 31, 2000). The regulations initially proposed on March 2, 1987, defined "manufacturer" as "any person who engages in the making, fabricating or processing of any litter generating product." 19 N.J.R. 400(b), 401 (March 2, 1987). At the time of final adoption of the regulations on January 20, 1988, the definition was clarified to "any person who engages in the making, fabricating or processing of any litter generating product regardless of whether the manufacturing activity occurs within or outside New Jersey." 20 N.J.R. 408(b), 410 (January 20, 1988) (codified at N.J.A.C.18:38-1.3).

The Director made clear why he changed the language from the initial proposal to the final adoption as follows:

> [t]he definition of "manufacturer" at N.J.A.C.18:38-1.3 has been expanded [from the proposed regulation] to clarify that a business with manufacturing activity solely outside of New Jersey would, if engaged in business in New Jersey, be considered a manufacturer and thus not qualify for the [wholesaler-to-wholesaler] deduction provided in N.J.A.C. 18:38-5.2(a)1. This is not an alteration of the Division's original position and does not impose additional burdens not encompassed in the proposed rule.
>
> [20 N.J.R. at 409.]

With the adoption of the current Act in 2002, the regulations were readopted in 2003 without any substantive change to the provision at issue. 35 N.J.R. 1652(a) (Apr.

-14-

21, 2003), 35 N.J.R. 3562(a) (Aug. 4, 2003). See also 47 N.J.R. 2486(a) (Oct. 5, 2015), 48 N.J.R. 331(a) (Feb. 16, 2016).

Previously, this court had the opportunity to review the wholesaler-to-wholesaler exemption under the previous litter control Act in Random House, Inc. v. Dir., Div. of Tax'n, 22 N.J. Tax 485 (Tax 2005). In that case, Random House was in the business of publishing and selling hardcover books. Random House sold a portion of its books to retailers, but most were sold to wholesalers or distributors who purchased books in large quantities. One of the issues raised was whether plaintiff was a wholesaler and thereby included in the wholesaler-to-wholesaler exemption. Id. at 498.[8]

This court noted even though the manufacturing was farmed out to third parties, the physical printing and binding of plaintiff's books took place on paper selected by plaintiff, in a format selected by plaintiff, with graphics selected by plaintiff, using a print style selected by plaintiff. Id. at 499. "Plaintiff, therefore, was very much a participant in the process of the physical preparation of the book." Ibid. As such, the court determined that Random House fit within the definition of manufacturer set forth in the regulations at N.J.A.C. 18:38-1.3 defining a manufacturer as someone who engages in the making, fabricating or processing of

---

[8] Like the current Act, the prior Act adopted in 1985 provided for a wholesaler-to-wholesaler exemption. Compare N.J.S.A. 13:1E-99.1(a) (sunset Dec. 31, 2000) with N.J.S.A. 13:1E-216(a).

-15-

any litter-generating product. The decision was substantially affirmed by the Appellate Division. Random House, Inc. v. Dir., Div. of Tax'n, 23 N.J. Tax 291 (App. Div. 2006). Cargill was very much a participant in the manufacturing process regardless of where the manufacturing took place. Unlike Random House, Cargill did not farm out the manufacturing to third parties. Thus, Cargill fits within the regulatory definition of manufacturer more so than Random House.

As to reliance upon long-standing regulations our Supreme Court has indicated that:

> the well-settled principle [is] that the Legislature's failure to interfere with an administrative interpretation over an extended period of time is proof that such interpretation conforms with the legislative intent [and] . . . will, under appropriate circumstances, be accorded great weight as evidence of its conformity with legislative intent.
>
> [GE Solid State v. Dir., Div. of Tax'n, 132 N.J. 298, 312-13, (1993) (citing Body-Rite Repair Co. v. Dir., Div. of Tax'n, 89 N.J. 540, 545-46 (1982)).]

However, the Court also cautioned in the same opinion that "[l]egislative inaction has been called a 'weak reed upon which to lean' and a 'poor beacon to follow' in construing a statute." GE Solid State, 132 N.J. at 313 (quoting Amerada Hess v. Dir., Division of Tax'n., 107 N.J. 307, 322 (1987)). The Court was concerned that a "long-continued error does not make valid what is clearly invalid." GE Solid State 132 N.J. at 313.

Here, the regulation does not contradict the plain meaning of the statute or the legislative history. In other words, the regulation is not a long-continued error of interpretation. Rather, the regulation follows the plain meaning and the legislative history. The Director's interpretation has been in effect for over 30 years, and on at least one occasion guided the decision of this court. See Random House, 22 N.J. Tax at 499. While the predecessor Act and the current Act have undergone numerous amendments over the years, at no time has the Legislature sought to express its disagreement with the Director's interpretation. In fact, not only had the predecessor Act been amended a number of times, the sunset provision was extended three times. L. 1986, c. 187, §1, L. 1992 c. 150, §1, L. 1995, c. 301, §1. Moreover, the regulations were adopted a few years after the initial enactment in 1986 and it is presumed that the Director was attuned to what the Legislature desired to be done. Either at the time of extending the sunset or with enactment of the 2002 Act, the Legislature could have certainly chosen to take a position contrary to the Director's regulation, but it chose not to do so. Rather, the Legislature reenacted the pertinent provisions without change.

The administrative interpretation is not countervailing, but rather supportive of the legislation. To deem manufacturers as wholesalers would render any reference to the term manufacturer superfluous. In addition, if the Legislature intended to exempt manufacturer to wholesaler sales it could have done so explicitly,

just like it did for wholesaler-to-wholesaler sales. The Director, through the regulatory process, has interpreted the statute the same way as this court. Since the plain words of the statute, the legislative history and the regulatory interpretation all point to applying the litter fee in this case, Cargill is not entitled to the exemption for sales between wholesalers or distributors.

## III. CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is DENIED and defendant's motion for summary judgment is GRANTED.