ANDREW, J.T.C.
In this state tax case, arising under the Clean Communities and Recycling Act, N.J.S.A. 13:lE-92 et seq., plaintiff, United Jersey Bank, challenges a litter control tax assessed by defendant, Director of the Division of Taxation, for tax years 1986, 1987 and 1988. The particular question involved is whether plaintiffs sales of pre-printed personal checks and deposit slips constitute retail sales of “litter-generating products” which are taxable under N.J.S.A. 13:1E-99.1.
The parties have stipulated the facts. Plaintiff is a banking organization which has its principal offices in Princeton, and branch offices located throughout the State. Plaintiff performs customary banking functions, such as lending and accepting custody of money and facilitating the transfer of funds by checks, drafts and other negotiable instruments. Many of plaintiffs customers maintain accounts with plaintiff from which they can draw funds, in part, through the use of preprinted personal checks. Customers select the style, color and format of the checks when opening an account. Plaintiff thereafter transmits a purchase order to the Deluxe Corporation (hereinafter “Deluxe”), which prints the checks and mails them to the customers.
The type of package used to send the checks to customers will depend on the type of check ordered. In many cases, five or six checkbook inserts, each containing 25 checks and several deposit slips, are packaged in a box, which in turn, is packaged in a thin cardboard mailing box. Deluxe bills plaintiff for these checks, and plaintiff, in turn, charges each customer a fee comprised of the amount billed to plaintiff by Deluxe plus an additional amount. The fee is payable to plaintiff as a charge against the customer’s checking account.
During an audit of plaintiff’s business, the Director noted that plaintiff had not filed litter control tax returns for tax years 1986, 1987 and 1988. On May 25, 1989, defendant issued a notice of assessment to plaintiff assessing a litter control tax of $1,203.10, consisting of $248.37, $450.49 and $504.24 for tax *519 years 1986, 1987 and 1988 respectively. These assessments were based on gross receipts from plaintiffs retail sales of checks of $1,103,849 for 1986, $2,002,158 for 1987, and $2,241,-068 for 1988. The Director also assessed penalties and interest to June 15, 1989 amounting to $279.86. Plaintiff protested this assessment, and on April 11, 1990, the Director issued a final determination letter affirming the assessment. In this letter, defendant calculated interest to April 30, 1990, bringing the total litter control tax, penalties and interest at issue to $1,704.09. Plaintiffs complaint in this court followed.
Plaintiffs challenge to the Director’s litter tax assessment is threefold. First, plaintiff asserts its blank, pre-printed checks and deposit slips are not “litter generating” within the meaning and intent of the litter control tax. Second, plaintiff contends that it does not generate litter and third, that its business operations do not constitute activities subject to the litter control tax.
In response, the Director maintains first, that plaintiff’s blank pre-printed checks and deposit slips are “paper products” as designated in N.J.S.A. 13:lE-94e.(12) and, as such, constitute legislatively defined “litter-generating products.” Second, the Director asserts that, whether plaintiff does or does not generate litter is irrelevant, because “there is nothing in the statute which requires consideration [of] whether [plaintiff] actually generates litter itself, either in connection with its sales of paper products or in connection with its general business activities.” Third, the Director asserts that plaintiffs check-selling activities clearly constituted taxable activities in accordance with the litter tax statute. N.J.S.A. 13:lE-99.1a.; N.J.A.C. 18:38-1.3.
I.

Implicated Statutes and Regulations.

“The litter control tax is an excise tax on the privilege of engaging in business in New Jersey as a manufacturer, wholesaler, distributor or retailer of litter-generating products mea *520 sured by the gross receipts from sales of such products within or into New Jersey.” N.J.A.C. 18:38-1.2.
N.J.S.A. 13:1E-99.1 imposes the tax on the sale of “litter-generating products” and states in pertinent part:
a. There is levied upon each person engaged in business in the State as a manufacturer, wholesaler, or distributor of litter-generating products a tax of 3/100 of 1% (.0003) on sales of those products within the State, and each person engaged in the State as a retailer of litter-generating products a tax of 2-25/100 of 1% (.000225) on sales of those products within the State, except any retailer with less that $250,000 in annual retail sales of litter-generating products is exempt from this tax.
[Emphasis added]
N.J.A.C. 18:38-1.3 defines retailer as follows:
.“Retailer” means every person engaged in the business of selling or exchanging goods for cash or barter or any consideration on the assumption that the purchaser of such goods has acquired the same for ultimate consumption or use.
A retail sale is defined in N.J.A.C. 18:38-1.3 as:
[S]ales for ultimate consumption or any purpose other than resale.
N.J.S.A. 13:lE-94e defines “litter-generating products” as follows:
"Litter-generating products’’ means the following specific goods which are produced, distributed, or purchased in disposable containers, packages or wrappings; or which are not usually sold in packages, containers, or wrappings but which are commonly discarded in public places; or which are of an unsightly or unsanitary nature, commonly thrown, dropped, discarded, placed, or deposited by a person on public property, or on private property not owned by him;
(1) Beer and other malt beverages;
(2) Cigarettes and tobacco products;
(3) Cleaning agents and toiletries;
(4) Distilled spirits;
(5) Food for human or pet consumption;
(6) Glass containers sold as such;
(7) Groceries;
(8) Metal containers sold as such;
(9) Motor vehicle tires;
(10) Newsprint and magazine paper stock;
(11) Drugstore sundry products, but not including prescription drugs or nonprescription drugs;
(12) Paper products and household paper;
*521 (13) Plastic and fiber containers made of synthetic material and sold as such, but not including any container which is routinely reused, has a useful life of more than one year and is ordinarily sold empty at retail;
(14) Soft drinks and carbonated waters; and
(15) Wine; ____
[Emphasis added]
At the outset it must be noted that plaintiff does not dispute the validity of either the taxing statutes or the Director’s interpretive and implementing regulations.
The Director asserts that the assessment at issue is appropriate because plaintiffs check-selling activities during the applicable period clearly fell within the literal language of the taxing statutes and implementing regulations. Specifically, the Director observes, first, that plaintiff’s gross receipts from its sales of checks and deposit slips exceeded $250,000, and thus, were not expressly exempted.
Second, the Director asserts that the checks and deposit slips are “litter-generating products” because they are “paper products” pursuant to subsection (12) of N.J.S.A. 13:lE-94e. These checks and deposit slips are distributed to plaintiff’s customers in disposable cardboard mailing boxes, and thus, “are produced, distributed, or purchased in disposable containers, packages or wrappings” as set forth in the first test in N.J.S.A. 13:lE-94e.
Third, the Director alleges that the checks were sold at retail since they were sold “for ultimate consumption or any purpose other than resale.” See N.J.A.C. 18:38-1.3. Fourth, the Director argues that the checks were sold by a retailer of litter-generating products inasmuch as plaintiff met the definition of retailer set forth in N.J.A.C. 18:38-1.3. Fifth and last, the Director notes that the sales of the checks and deposit slips occurred in this State.
Essentially, although plaintiff’s challenge to the Director’s assessment is three-pronged, its position is that this court should not be controlled by the literal language of the taxing-statute and the implementing regulations.
*522 II.

Is a literal interpretation appropriate?

Plaintiff asks this court to construe the statute at issue by determining the intent of the Legislature. That intent, according to plaintiff, may be gleaned from the evil sought to be remedied by the Legislature which, plaintiff asserts, was to rid the State of unsightly litter which is discarded in public places such as roadways. Plaintiff maintains that the Legislature did not have bank checks or deposit slips in mind when it adopted the litter control tax.
Plaintiff relies upon a number of constructional aids to support its contention that the taxing statute should be limited in its reach to products which are commonly thought of as the subject of unsightly litter. These extrinsic materials are: (1) the title of the act, (2) expressly stated legislative findings, (3) the plain language of some other provisions of the act at issue that are not relied upon by the Director, and (4) the legislative statement appended to the taxing statute. It is plaintiffs contention that these extrinsic aids or sources demonstrate that the Legislature intended to limit the effect of the taxing statute to products which are “commonly discarded” and, since there is no evidence that bank cheeks and deposit slips are so discarded [1], the Legislature could not have intended the litter control tax to apply to those items.
Plaintiffs argument is unpersuasive in this regard for two reasons. First, plaintiff focuses on the checks and deposit slips themselves. The Director bases her argument for taxability on that part of N.J.S.A. 13:lE-94e which includes as a “litter-generating product” any item “produced, distributed, or purchased in disposable containers, packages or wrappings.” The *523 Director does not contend that the checks and deposit slips are taxable as items “commonly discarded in public places,” or goods which are “of an unsightly or unsanitary nature, commonly thrown, dropped, discarded, placed, or deposited” on public property or on the private property of another. See N.J.S.A. 13:lE-94. As discussed earlier, the parties stipulated that boxes of checks and deposit slips are mailed in thin cardboard mailing boxes.
The Director contends that bank checks and deposit slips become “litter-generating products” because they are purchased in a disposable container, package or wrapping; specifically, the thin cardboard mailing box. Plaintiffs arguments do not address whether items such as cardboard mailing boxes are commonly discarded as litter, or whether the Legislature intended to subject goods packaged in such boxes to the litter control tax. There is nothing, however, which indicates that the Legislature did not intend the litter control tax to apply to paper products enclosed in disposable containers, packages or wrappings, even though the products themselves may not constitute items commonly thought of as litter. Plaintiffs position is, thus, not convincing.
Second, and, perhaps more important, “[wjhen a statute is clear on its face, a court need not look beyond the statutory terms to determine the legislative intent.” State v. Churchdale Leasing, Inc., 115 N.J. 83, 101, 557 A.2d 277 (1989); see also Dept. of Law & Public Safety v. Bigham, 119 N.J. 646, 650-51, 575 A.2d 868 (1990); State v. Butler, 89 N.J. 220, 226, 445 A.2d 399 (1982); In re Jamesburg High School Closing, 83 N.J. 540, 547, 416 A.2d 896 (1980).
In Fedders Financial Corp. v. Taxation Div. Dir., 96 N.J. 376, 476 A.2d 741 (1984), our Supreme Court began its interpretive analysis of a statutory phrase in a taxing statute by reviewing some relevant principles of statutory construction. It noted that a court should follow the clear import of unambiguous statutory language. Id. at 384-85, 476 A.2d 741. The Court then reviewed a number of New Jersey cases involving *524 taxing statutes that all concluded that, absent some ambiguity, a literal reading of a taxing statute is required. Id. at 386-88, 476 A.2d 741.
A court's function is to “enforce the legislative will as expressed by the clear language of the statute, not to presume the Legislature intended something other than what is expressed by its plain language.” In re Howell Tp., Monmouth County, 254 N.J.Super. 411, 419, 603 A.2d 959 (App.Div.1991), certif. denied, 127 N.J. 548, 606 A.2d 362 (1991). “ ‘Construing’ or ‘interpreting’ a clear and unambiguous statute is simply not permissible.” MacMillan v. Taxation Div. Director, 180 N.J.Super. 175, 177, 434 A.2d 620 (App.Div.1981), aff'd o.b. per curiam, 89 N.J. 216, 445 A.2d 397 (1982). In the present case, the language of N.J.S.A. 13:lE-94e is clear and unambiguous on its face, and thus, the plain language of the statute will dictate the result. Consequently, it is unnecessary for the court to look to other sources for legislative intent.[2]
Although plaintiff does not contend that the taxing statute at issue is ambiguous, nevertheless, plaintiff maintains that a literal interpretation of the taxing provisions at issue would be inconsistent with legislative intent. Relying upon Judge Learned Hand’s oft-quoted remark that “there is no surer way to misread any document than to read it literally,” Guiseppi v. Walling, 144 F.2d 608 (2d Cir.1944), aff'd sub nom., Gemsco v. Walling, 324 U.S. 244, 65 S.Ct. 605, 89 L.Ed. 921 (1945), plaintiff urges this court to avoid a literal reading of the taxing statute. See Westinghouse Electric Corp. v. Bd. of Review, 25 N.J. 221, 226-27, 135 A.2d 489 (1957).
This court on a number of occasions has, in fact, avoided a literal interpretation of an unambiguous statutory provision, and not surprisingly, quoted Judge Hand’s remark in the pro *525 cess. See Murnick v. Asbury Park, 5 N.J.Tax 406, 412-13 (Tax 1983), aff'd o.b. per curiam, 193 N.J.Super. 1, 471 A.2d 1203 (App.Div.1983), and Olde Lafayette Village, Ltd. v. Lafayette Tp., 9 N.J.Tax 562, 568-71 (Tax 1988). In each of those eases, however, this court looked beyond the statutory language because the result produced by a literal reading would have been either: (1) in conflict with the underlying legislative purpose, see Murnick v. Asbury Park, supra at 414, or (2) unreasonable or nonsensical, see Olde Lafayette Village, Ltd. v. Lafayette Tp., supra at 569-570. See also Union Terminal Cold Storage Co. v. Spence, 17 N.J. 162, 166, 110 A.2d 110 (1954) (“It is also a fundamental rule of statutory construction that every requirement of the act must have the full effect the language imports unless such interpretation of the words will lead to great inconvenience or subversion of some important object of the act or would lead to an absurdity.”). Neither of these results would be produced in this case if a literal reading of the taxing statute were employed.
As the Director observes, N.J.S.A. 13:lE-94e establishes three tests for determining whether any one of the 15 items enumerated in the statute will qualify as a “litter-generating product.” See N.J.A.C. 18:38-3.1. As set forth previously, N.J.S.A. 13:lE-94e states in pertinent part:
“Litter-generating products ” means the following specific goods which are produced, distributed, or purchased in disposable containers, packages or wrappings; or which are not usually sold in packages, containers, or wrappings but which are commonly discarded in public places; or which are of an unsightly or unsanitary nature, commonly thrown, dropped, discarded, placed, or deposited by a person on public property, or on private property not owned by him____
[Emphasis added]
The Director contends that the bank checks and deposit slips at issue are taxable under the first statutory test which includes as “litter-generating products” those “goods which are produced, distributed, or purchased in disposable containers, packages or wrappings.” Additionally, the Director alleges, and plaintiff does not dispute, that the thin cardboard mailing boxes are disposable in nature. Plaintiff, however, disputes the *526 Director’s contention that the first test set forth in N.J.S.A. 13:lE-94e applies to bank checks and deposit slips.
Specifically, plaintiff contends that the word “or” as used in N.J.S.A. 13:lE-94e should not be accorded its normal disjunctive import, because such an interpretation would frustrate clear legislative intent. Those cases which address the interpretation of “or,” deal solely with whether “or” should be read in the disjunctive or in the conjunctive as the word “and.” See, e.g., Red Bank Ed. Assn. v. Red Bank High Bd. of Ed., 151 N.J.Super. 435, 438, 376 A.2d 1325 (App.Div.1977), aff'd, 78 N.J. 122, 393 A.2d 267 (1978); State v. Holland, 132 N.J.Super. 17, 24, 331 A.2d 626 (App.Div.1975); Weinstein v. City of Newark, 100 N.J.Super. 199, 219, 241 A.2d 478 (Law Div.1968). Absent contrary legislative intent, “or” should be considered to carry a disjunctive import, and the word “and” a conjunctive import. State v. Duva, 192 N.J.Super. 418, 421, 470 A.2d 53 (Law Div.1983); Weinstein, supra 100 N.J.Super. at 219, 241 A.2d 478; Showell v. Horn, 65 N.J.Super. 374, 382, 167 A.2d 832 (Law Div.1961).
Plaintiff, however, does not propose that “or” be given a conjunctive meaning, but instead suggests that the statute be read to pair each of the 15 enumerated items with the particular test set forth in N.J.S.A. 13:lE-94e “which bears a connection to that act of disposing of that item as litter.”
In support of its position, plaintiff compares bank checks and deposit slips to a candy bar. Since a candy bar is consumed, after it is eaten, only the disposable paper wrapper remains. Consequently, plaintiff states that the candy bar should be analyzed under the test in N.J.S.A. 13:lE-94e which relates to those items purchased in disposable wrappings. Since checks and deposit slips, however, are not consumed in the same sense as a candy bar, plaintiff asserts they should be analyzed under the test in N.J.S.A. 13:lE-94e which relates to those items which are “commonly thrown, dropped, discarded, placed or deposited by a person on public property, or on private property not owned by him.”
*527 Plaintiff submits that checks and deposit slips should not be analyzed under the test which relates to those “goods which are produced, distributed, or purchased in disposable containers, packages or wrappings” as the Director contends. There is nothing, however, which indicates that the Legislature intended N.J.S.A. 13:lE-94e to be read in the manner plaintiff suggests. Moreover, although the act and its history and legislative statements speak in terms of “litter,” there is nothing which evidences an intent to limit the application of the statute to only those situations involving items discarded in public places. If the Legislature had intended to limit the reach of the statute as plaintiff suggests, it clearly had the opportunity to do so.
If this court were to acquiesce in plaintiffs proposed construction of the statute, it would, in effect, be rewriting the statute and intruding into an area reserved exclusively to the Legislature. This court cannot take unambiguous language and control it or give it a forced interpretation in order to effectuate what I, or any other court, may conceive to be the unexpressed intention of the Legislature. The results which flow from following the statute as written can only be relieved by legislation.
Consequently, considering that there is no evidence of legislative intent to the contrary, “or” as used in N.J.S.A. 13:lE-94e must retain its customary disjunctive meaning.
Additionally, N.J.A.C. 18:38-3.1 confirms that “or” as used in N.J.S.A. 13:lE-94e must carry a disjunctive import, and that plaintiffs proposed subjective reading of the statute is improper. As has already been noted, plaintiff does not contest the validity of the Director’s regulations. N.J.A. C. 18:38-3.1 states in pertinent part:
(a) Litter-generating products means the 15 categories of products listed in (b) below which meet any of the following conditions:
1. They are produced, distributed or purchased in disposable containers, packages or wrappings; or
2. They are not usually sold in packages, containers or wrappings but are commonly discarded in public places; or
*528 3. They are of an unsightly or unsanitary nature commonly thrown, dropped, discarded, placed or deposited by a person on public property, or on private property not owned by him.
(b) It is presumed that all products listed in the categories below satisfy at least one of the conditions stated in (a) above and qualify as a litter-generating product____
[Emphasis added]
N.J.A.C. 18:38-3.1(a) states that all that is necessary for the litter control tax to apply is that the 15 enumerated items meet any of the conditions set forth. This naturally implies that “or” must be read in the disjunctive. Additionally, the fact that N.J.A.C. 18:38-3.1(b) states that each of the 15 enumerated items will satisfy “at least one of the conditions stated in (a),” indicates that the Legislature believed it is possible that an enumerated item could satisfy more than one of the tests or conditions in N.J.A.C. 18:38-3.1(a). Thus, plaintiffs contention that the statute should be read to pair each of the 15 enumerated items with the particular test set forth in N.J.S.A. 13:lE-94e “which bears a connection to that act of disposing of that item as litter” is just not persuasive.
Plaintiff also alleges that the Director inappropriately applied a literal interpretation to “paper” as used in N.J.S.A. 13:1E-94e(12). Plaintiff, again, asserts that a literal reading is contrary to legislative intent. Plaintiff complains that the Director interprets “paper” to mean all paper regardless of whether the paper is of the type that is commonly discarded in public places. Since bank checks and deposit slips are not commonly discarded litter, plaintiff argues that the Legislature did not intend these items to be subject to the litter control tax. As discussed previously, however, there is nothing which indicates that the Legislature did not intend the litter control tax to apply to paper products which are enclosed in a disposable container, package or wrapping.[3]
*529 Additionally, under the common understanding of the word, checks and deposit slips clearly constitute “paper.” N.J.A.C. 18:38-3.1(b)(12) defines “paper products and household paper” as follows:
Paper products and household paper means all items of tangible personal property made or substantially derived from paper including all paper products for home or other personal use but does not include newspapers and magazines.
Under this definition, checks and deposit slips clearly qualify as “paper products and household paper.” Plaintiffs contention that bank checks and deposit slips should not be considered “paper” under N.J.S.A. 13:lE-94e(12) is just not convincing.
In sum, a literal reading of the statutory language is required in this case because the language is unambiguous and will not lead to a result which would conflict with underlying legislative purpose or be absurd or unreasonable.
III.

Must one’s business be predominantly the sale of “litter-generating” products?

Plaintiff, next, attacks the imposition of the litter control tax by alleging that it is not a “retailer of litter-generating products” under N.J.S.A. 13:lE-99.1a, and thus, is not subject to the tax. Plaintiff asserts that it is in the business of banking, and that banks are not the type of business to which the Legislature intended the litter control tax to apply. In its brief, plaintiff incorrectly quotes N.J.S.A. 13:lE-99.1a as stating, in part, that the litter control tax is levied upon “each person engaged in the business as a retailer of litter-generating products.” This portion of N.J.S.A. 13:lE-99.1a, in fact, states that a litter control tax will be levied on “each person engaged in business in the State as a retailer of litter-generating products.” Emphasis added.
*530 Focusing on its incorrectly quoted version of the statute, plaintiff infers that the Legislature intended to tax only “those entities engaged in the business of retailing litter.” Plaintiff contends that since it is a bank, it is not in the business of retailing litter. Plaintiff appears to be arguing that, since the majority of its business does not involve the sale of bank checks and deposit slips, it should not be subject to the litter control tax. Plaintiff notes that in 1987 and 1988, “net fees” from the sale of checks amounted to only approximately .10 percent and .11 percent of plaintiffs total income, “a tiny fraction of plaintiffs total income.”
Plaintiffs arguments are, again, unpersuasive. There is nothing which indicates that the Legislature intended the litter control tax to apply only to those entities in which the major portion of their business involves retailing litter. Additionally, there is nothing in the Clean Communities and Recycling Act, 13:lE-92 et seq., which exempts banking institutions from the litter control tax. As the Director appropriately observes, legislative intent to provide an exemption from taxation must be clearly expressed. See Bernards Tp. v. Taxation Div. Director, 7 N.J. Tax 99, 105 (Tax 1984). N.J.A.C. 18:38-1.3 defines “retailer” in related part as:
every person engaged in the business of selling or exchanging goods for cash or barter or any consideration on the assumption that the purchaser of such goods has acquired the same for ultimate consumption or use. The “retailer” designation is limited to those persons primarily engaged in the business of making retail sales. “Primarily’ means that more than 50% of gross receipts from all sales are retail sales.
[Emphasis added]
N.J.A. C. 18:38-1.3 defines “gross receipts” in pertinent part as:
all receipts, of whatever kind and in whatever form, derived from the sales of litter-generating products, without any deduction therefrom on account of any item of cost, expense or loss.
[Emphasis added]
N.J.A.C. 18:38-1.3 defines “retail sales” as “sales for ultimate consumption or any purpose other than resale.”
From the aforementioned definitions, it is clear that plaintiff is “primarily engaged in the business of making retail *531 sales,” and thus, qualifies as a retailer. As noted in N.J.A.C. 18:38-1.3, “ ‘primarily’ means that more than 50% of gross receipts from all sales are retail sales.” N.J.A.C. 18:38-1.3, states that “gross receipts” includes only receipts derived from the sale of litter-generating products. Since the only sales of litter-generating products made by plaintiff are the sales of checks and deposit slips, 100% of plaintiff’s “gross receipts” are from the sale of “litter-generating products.” Additionally, since the sales of checks and deposit slips are clearly not made for the purpose of resale, the sales of these items constitute “retail sales.”
Further, it should be noted that the exemption from the litter control tax in N.J.S.A. 13:1E-99.1 for “a retailer with less than $250,000 in annual retail sales of litter-generating products” does not apply to plaintiff. As previously discussed, plaintiff’s gross receipts for tax years 1986, 1987 and 1988 amounted to $1,103,849, $2,002,158, and 2,241,068 respectively. As the Director points out, the fact that plaintiff’s net fees from the sales of checks and deposit slips are a small fraction of its total income is irrelevant. Clearly, plaintiff qualifies as a “retailer of litter-generating products” for purposes of N.J.S.A. 13:1E-99.1a.
In sum, under the plain language of N.J.S.A. 18:lE-94e, the pre-printed personal bank checks and deposit slips at issue in this matter qualify as “litter-generating products.” Additionally, the fact that plaintiff is a bank does not exempt it from litter control tax. Further, plaintiff qualifies as a “retailer of litter-generating products” under N.J.S.A. 13:lE-99.1a.
The Clerk of the Tax Court is directed to issue a judgment affirming the Director’s assessment.

 In its brief, plaintiff requested that this court take judicial notice of the fact that bank checks are not commonly discarded as litter. This request comes a little late inasmuch as the Director had no opportunity to voice an objection or to demonstrate that the fact, of which plaintiff requests judicial notice be taken, is not fact. In any event, because of the manner in which I have decided this case, plaintiffs request need not be considered.

 Moreover, our courts have long recognized that the title of an enactment and a statement attached to the original bill are but general statements of policy and do not detract from the plain meaning of the language used in the statutory provisions. Gabin v. Skyline Cabana Club, 54 N.J. 550, 557, 258 A.2d 6 (1969).

 To demonstrate an unreasonable result which could occur under the Director's logic, plaintiff conjures up and offers to this court an example of a situation involving a Picasso drawing which would supposedly produce a taxable event under the Director’s interpretation of the statute. The example is not helpful nor relevant because, under the statute, it is not certain whether the *529 example offered would be determined to be taxable by the Director. The example simply does not assist or advance the required analysis.