# TAX COURT OF NEW JERSEY



**CHRISTINE M. NUGENT**
JUDGE

Essex County Dr. Martin Luther King Jr Justice
Building
495 Martin Luther King Blvd
Fourth Floor
Newark, New Jersey 07102-0690
(609) 815-2922 Ext. 54610

June 28, 2022

William Francis Kehoe, Esq.
Kehoe and Company, LLC
Suite 2
96 Route 206
Augusta, New Jersey 07822-2020

Joseph A. Palumbo
Deputy Attorney General
Richard J. Hughes Justice Complex
25 Market Street
P.O. Box 106
Trenton, New Jersey 08625-0106

Re: Sutherland Packaging, Inc. v. Dir., Division of Taxation
    Docket No. 013288-2014

Dear Counsel:

This opinion arises from cross-motions for summary judgment. At issue is whether the Litter Control Fee, N.J.S.A. 13:1E-213 to -233, applies to Sutherland Packaging's operations. Specifically, the analysis falls on Sutherland's production of cardboard boxes and displays, and whether one or both products constitute the type of litter-generating paper-product that the statute seeks to tax.

R. 4:46-2(a) discusses the technical requirements of a summary judgment motion relevant to the cross-motions filed by the parties. The motion "shall be served with a brief and a separate statement of material facts . . ." which statement of material facts "shall set forth in separately numbered paragraphs a concise statement of each material fact as to which the movant contends there is no genuine issue together with a citation to the portion of the motion record establishing the fact or demonstrating that it is uncontroverted." Ibid.

*






Per R. 4:46-2(b),

> [a] party opposing [a motion for summary judgment] shall file a responding statement either admitting or disputing each of the facts in the movant's statement . . . all material facts in the movant's statement which are sufficiently supported will be deemed admitted for purposes of the motion only, unless specifically disputed by citation conforming to the requirements of paragraph (a) demonstrating the existence of a genuine issue as to the fact.

Plaintiff cross-moved for summary judgment without providing a formatted statement of material facts or a citation to the record, as required under the rule. R. 4:46-2(a). Despite the opportunity to correct the error plaintiff did not comply. First within the brief, and subsequently as a separate pleading, plaintiff included a purported statement of facts comprised of narratives which highlighted some of defendant's statement of facts, along with unsubstantiated references to industry recycling data, and citations to law. Plaintiff did not respond to defendant's statement of undisputed material facts required by R. 4:46-2(b). Instead, plaintiff noted, "Plaintiff agrees that most of the facts are undisputed." These are not merely technical rules. See Polzo v. County of Essex, 196 N.J. 569, 586 (2008) (the party opposing a summary judgment motion has the affirmative burden to respond). There is no claim of a material fact in dispute. Based on the filings the court will accept the facts as set forth by defendant.

Facts and Procedural History

Sutherland Packaging ("plaintiff") is a New Jersey corporation located at 254 Brighton Avenue, Andover, New Jersey. Plaintiff operates a cardboard manufacturing business which produces corrugated cardboard shipping containers and displays for sale to its clients. The clients use the shipping containers for the transportation or storage of goods. Clients include retailers and marketing firms who use the cardboard displays in retail locations to display and sell their products to customers.

2

The boxes and displays are manufactured at plaintiff's facility using corrugated roll stock made of pine trees and/or recycled paper which is combined with adhesive and environmentally friendly ink. The process then involves printing, slotting, scoring, die-cutting, folding, and gluing.

When ready to leave the manufacturing facility, the boxes are compressed, baled, and stabilized with recycled four-way bands made of Polyethylene Terephthalate ("PET"), a plastic, and covered in recycled dunnage, which is corrugated paper scrap. Displays are packed in the same way and are also covered in recycled wrap. Boxes and displays are put on returnable pallets for shipment. All the paper waste created in manufacturing and all the covering materials is recycled.[1]

In the years prior to 2006, plaintiff filed a litter tax return for its business. During an audit of plaintiff's business in 2012, defendant concluded that plaintiff had not filed a tax return under the statute for tax years 2006 through 2012. Taxation issued a Notice of Assessment Related to Final Audit Determination for tax years 2006 through 2012 finding plaintiff liable for Corporation Business Tax, Sales and Use Tax and a Litter Fee. In a timely complaint filed in the tax court plaintiff challenged the litter fee assessed in the amount of $14,619.30, plus penalties and interest. Defendant filed the within motion for summary judgment followed by plaintiff's cross-motion for summary judgment.

<u>Analysis</u>

I.      <u>Summary Judgment Standard</u>

---

[1]   In a supplemental brief submitted to the court plaintiff contends it recycles its products as well. The contention was not contained in a certification. Nonetheless defendant accepted the fact as undisputed for the purposes of the motion.

Pursuant to R. 4:46-2(c), the court should grant a motion for summary judgment provided that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Ibid.

The Court clarified the standard for summary review in Brill v. Guardian Life Ins. Co. of America, thusly:

> [T]he determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
>
> [142 N.J. 520, 523 (1995)].

The court finds that the issue under consideration is one of statutory interpretation presented in a manner ripe for summary judgment.

II.     The Litter Fee under Clean Communities Program Act

The New Jersey litter fee is assessed under the "Clean Communities Program Act." L. 2002, c.128, sec.1; amended 2007, c.311, sec.13. It is imposed on "each person engaged in business in the State as a manufacturer, wholesaler, or distributor of litter-generating products." N.J.S.A. 13:1E-216(a). The fee, historically known as a tax, constitutes "an excise tax on the privilege of engaging in business in New Jersey as a manufacturer, wholesaler, distributor or retailer of litter generating products measured by the gross receipts from sales of such products within or into New Jersey." United Jersey Bank v. Dir., Div. of Taxation, 12 N.J. Tax 516, 519-20 (Tax 1992); Feesers, Inc. v. Dir., Div. of Taxation, 20 N.J. Tax 201, 204-05 (Tax 2002).

The litter statute defines "Litter" as follows:

d. *'Litter'* means *any used or unconsumed substance or waste material which has been discarded,* whether made of aluminum, glass, plastic, rubber, paper, or other natural or synthetic material, or any combination thereof, including, but not limited to, any bottle, jar or can, or any top, cap or detachable tab of any bottle, jar or can, any unlighted cigarette, cigar, match or any flaming or glowing material or any garbage, trash, refuse, debris, rubbish, grass clippings or other lawn or garden waste, newspapers, magazines, glass, metal, plastic or paper containers or other packaging or construction material, *but does not include the waste of the primary processes of mining or other extraction processes*, logging, sawmilling, farming *or manufacturing.*

[**N.J.S.A. 13:1E-215(d) (emphasis added)].**[2]

The statute defines "Litter-generating products" as follows:

e. Litter-generating products" means the *following specific goods which are produced, distributed, or purchased in disposable containers, packages or wrappings*; or which are not usually sold in packages, containers, or wrappings but which are *commonly discarded in public places*; or which are of *an unsightly or unsanitary nature, commonly thrown, dropped, discarded, placed, or deposited by a person on public property, or on private property not owned by that person:*

. . . .

12) Paper products and household paper, but not including roll stock produced by paper product manufacturers and wood pulp;

. . . .

[N.J.S.A. 13:1E-215(e) (emphasis added)].

The statute lists fifteen categories of litter-generating products. N.J.S.A. 13:1E-215(e). Category twelve, (12) "Paper products and household paper," is at issue here. N.J.S.A. 13:1E-215(e)(12). A product from the list of fifteen need only fall within one of the three statutory

---

[2]  The court replicates herein the bold letters and italics as used by plaintiff in its brief.

subcategories for the manufacturer, wholesaler, or distributor to be subject to the tax. <u>United Jersey Bank</u>, 12 N.J. Tax at 528.

Accordingly, for plaintiff to be liable for the litter fee for production of carboard boxes and/or displays, plaintiff would need to be: engaged in business in the state as a manufacturer, wholesaler, or distributor of, a paper product, which is "produced, distributed, or purchased in disposable containers, packages or wrappings;" or, a paper product which is "not usually sold in packages, containers, or wrappings but which [is] commonly discarded in public places;" or, a paper product which is of "an unsightly or unsanitary nature, commonly thrown, dropped, discarded, placed, or deposited by a person on public property, or on private property not owned by that person." N.J.S.A. 13:1E-215(e). The Director assessed plaintiff under the first subcategory above, as manufacturer, wholesaler, or distributor of, a paper product, which is "produced, distributed, or purchased in disposable containers, packages or wrappings." <u>Ibid.</u>

The statute includes the following language relied on by plaintiff:

N.J.S.A. 13:1E-214 Findings; declarations relative to the Clean Communities Program

> 2. The Legislature finds that an uncluttered landscape is among the most priceless heritages which New Jersey can bequeath to posterity; that it is the duty of government to promote and *encourage a clean and safe environment*; that the proliferation and accumulation of *carelessly discarded litter may pose a threat to the public health and safety*; that the *litter problem* is especially serious in a State as densely populated and heavily traveled as New Jersey; and that *unseemly litter* has an adverse economic effect on New Jersey by making the State less attractive to tourists and new industry and residents.
>
> The Legislature, therefore, declares it to be in the aesthetic, environmental, and economic interests of the State of New Jersey to support a Clean Communities Program.
>
> [L.2002, c.128, sec.2, amended 2007, c.311, sec.14 (emphasis added)].

Defendant contends that plaintiff fits within the plain meaning of the statute since its boxes and displays are "paper products" which are "produced, distributed, or purchased in disposable containers, packages or wrappings." N.J.S.A. 13:1E-215(e). In further support of the assessment defendant relies on the deference afforded to decisions of the Director. "Courts have recognized the Director's expertise in the highly specialized and technical area of taxation." Aetna Burglar & Fire Alarm Co. v. Dir., Div. of Taxation, 16 N.J. Tax 584, 589 (Tax 1997) (citation omitted). The Director's construction of a tax statute "which is not plainly unreasonable and with which the Legislature has not interfered, is entitled to prevail." Ibid.

Plaintiff does not dispute that the boxes and displays are products made of paper. Plaintiff argues that the court should go beyond the plain words and meaning of the statute to consider the legislative intent and thereby conclude that its products should not be defined as litter. Plaintiff contends, "[t]he Legislature was clearly targeting products that were 'carelessly discarded litter' and hoping to promote the aesthetic, environmental and economic interests of the State of New Jersey. It is with that understanding of the legislative intent, as specifically stated in the Legislative Findings, that the language of the statute must be read." Per plaintiff, because it recycles, it has "amply demonstrated, and the Director admits, that the Taxpayer's products are not 'carelessly discarded litter'; but rather products which are part of any industry that is a leader in recycling."

C. Statutory Interpretation

The "paramount purpose" in construing a statute is "to ascertain the legislative intent." Stryker Corp. v. Dir., Div. of Taxation, 168 N.J. 138, 157 (2001) (internal citation omitted). "Construction of any statute necessarily begins with consideration of its plain language." Merin v. Maglaki, 126 N.J. 430, 434 (1992) (internal citation omitted). The meaning derived from that language controls if it is clear and unambiguous. Id. at 436. On the other hand, "[w]hen a statute

7

is ambiguous, a court's function is to ascertain and to effectuate the Legislature's intent . . . for which [e]xtrinsic aids, such as legislative history, committee reports, and contemporaneous construction, may be used to help resolve any ambiguity." Wingate v. Estate of Ryan, 149 N.J. 227, 236 (1997).

Specifically, there are two New Jersey tax court cases decided under the litter statute that provide guidance to this court in interpreting the law, United Jersey Bank v. Dir., Div. of Taxation, 12 N.J. Tax at 516, where the court adopted a literal reading of the statute, and Random House, Inc. v. Dir., Div. of Taxation, 22 N.J. Tax 485 (Tax 2005), aff'd, 23 N.J. Tax 291 (App. Div. 2006), where the court read the statutory language more expansively.[3]

In United Jersey Bank, the plaintiff bank challenged the litter tax, asserting that its sales of pre-printed personal checks and deposit slips did not constitute "litter-generating products" under the statute. 12 N.J. Tax at 523. The court found nothing that indicated that the legislature did not intend for the litter tax to apply to the bank's paper products as they were enclosed in disposable containers, packages, and wrappings, even if the bank's checks and deposit slips themselves were not commonly thought of as "litter-generating products." Ibid. Pointedly, the court explained that since the statute was clear on its face, the court did not need to look beyond statutory terms to determine the legislative intent. Ibid. That is, in the face of unambiguous language, "the plain

---

[3] In those cases, the litter statute was found at N.J.S.A. 13:1E-94 to 99.1. That statute was repealed by L.2002, c.128, sec. 12, and replaced by the statute at issue here, N.J.S.A. 13:1E-213 to -233. For history of the statute, see Cargill Meat Solutions, Corp. v. Dir., Div. of Taxation, 31 N.J. Tax 506 (Tax 2020). New Jersey has imposed a litter tax on businesses responsible for litter generating products since 1986. "The litter tax . . . sunset on December 31, 2000 . . . the Legislature revived and revamped the earlier provisions into the current act which was signed into law . . . December 20, 2002, retroactive to January 1, 2002. L. 2002, c. 128, sec.14 . . . N.J.S.A. 13:1E-213 to -223." Id. at 512. The newly re-enacted 2002 statute replaced "tax" with "user fee." Id. at 513. In reviving the statute some changes to its language were made, but none that effect consideration of the issues raised in this matter, nor this court's reliance on the cases cited herein.

language of the statute will dictate the result." Id. at 524. Notably, in support of the assessment against plaintiff, defendant contends that until the time of United Jersey Bank, the tax court assigned a literal reading to the litter statute in upholding the determination of the Director. See Royal Food Distributors v. Dir., Div. of Taxation, 15 N.J. Tax 60 (Tax 1995) and Feesers, Inc. v. Dir., 20 N.J. Tax at 201 (cases involving food products sold in disposable wrap).

In Random House, Inc. v. Dir., the court considered whether a publisher's books were "paper products" under the litter statute and, as such, whether the books constituted "litter-generating products" under the statute. 22 N.J. Tax at 491. Taxation argued that the books were literally and clearly "paper products" as they were made wholly or primarily of paper. Id. at 490. However, the court found that the term "paper products" was not to be read literally. Id. at 496. "That a literal reading of 'paper-products' as used in N.J.S.A. 13:1E-94(e)(12) does not accord with the legislative intent and purpose is suggested by the language of the statute as interpreted by the Director." Ibid.

In reaching its decision, the court considered the following. The legislature had deleted "newspapers and magazines" from the definition of "litter-generating products" and substituted in its place, "newsprint and magazine paper stock," N.J.S.A. 13:1E-94(e)(10), though it did not remove "newspapers and magazines" from the definition of "litter" found in a different section of the statute at N.J.S.A. 13:1E-94(e)(12). Ibid. The court noted, "[t]he Director has interpreted the substitution as excluding newspapers and magazines from the 'paper products' category, N.J.A.C. 18:38-3.11(b)(12), even though 'newspapers [and] magazines' are included in the definition of 'litter' in N.J.S.A. 13:1E-94(e)(12)." Ibid. Thereby, the court found that the Director "recognized

9

that the term 'paper products' should not be read literally because a literal reading necessarily would include newspapers and magazines." Ibid.[4]

The Random House court concluded that books were comparable to statutorily excluded newspapers and magazines in that the value of the paper was secondary to the value of the content on the paper. Id. at 496. The court related this concept to art, noting, "Paper is the primary and predominant component of a Picasso drawing . . . the value of the Picasso drawing is the drawing itself, not the surface upon which it is placed. The value of a magazine and a book is the printed matter on the magazine's or book's pages and not the pages themselves." Ibid. The court proceeded to juxtapose this artistic exception to the checks and deposit slips in United Jersey Bank. "The utility of photocopy paper is its use in the photocopying process. Similarly, the utility of checks and deposit slips is in the physical use of the paper for making payments or bank deposits." Random House, 22 N.J. Tax at 497. The Random House court emphasized the difference between the physical use of paper and art. "A party acquiring a work of art on paper, a magazine, or a book

_____

[4] At the time Random House was decided, N.J.A.C. 18:38-3.1(b)(12) read, in pertinent part:

> (b)(12) Paper products and household paper means all items of tangible personal property made or substantially derived from paper including all paper products for home or other personal use but does not include newspapers, magazines, and roll stock produced by paper product manufacturers and wood pulp, sold as such.
> i.  A newspaper is a printed publication issued at regular intervals, usually daily or weekly, and which contains news, editorial comment, feature articles, and advertisements.
> ii. A magazine is a printed publication issued periodically, at least four times a year, and is usually bound with a paper cover and contains many and miscellaneous articles on a variety of topics.

[35 N.J.R. 3562(a) (Aug. 4, 2003)].

does not intend to use the paper as such, and the utility of the paper is only as a means of containing the artwork or text constituting the real value of the product." Ibid. Thereby, the court rejected a literal reading of the statute, and found that a book did not constitute a "paper product" and that the taxpayer was not subject to the litter fee under the statute. Ibid.

Plaintiff here urges the court to likewise reject a literal reading of the statute. Among plaintiff's contentions is that the definition of "litter" used in the statute "is so vague that the legislature gave general examples of what might be considered 'litter.' This is clear by the legislature using the term '. . . whether . . .' when giving examples of what might be considered 'litter.'" Plaintiff contends that because the language is vague, the court should look "at the language of the legislative intent, clearly and specifically stated in the Act, which is to address: 'carelessly discarded litter [that] may pose a threat to the public health and safety . . .'" Plaintiff argues that an examination of the statutory language and its purpose makes clear that plaintiff is not subject to the litter fee because it recycles.

Pointing to the statute's first subcategory, plaintiff contends the language targets the "disposable containers, packages or wrappings" that become the litter, and does not target the products inside the wrap, which plaintiff claims would exclude it from the fee since the wrap is recycled. Per plaintiff, defendant's use of subcategory one thereby constitutes bootstrapping. Per plaintiff, it also escapes the fee under subcategories two and three because those provisions address products "commonly discarded in public places, or on public or private property." It argues that since defendant did not rely on subcategory two or three to assess the litter fee, defendant must not believe plaintiff's products or wrap violate the statute as being "commonly discarded in public places, or on public or private property." Instead, defendant admits plaintiff's products and by-products are recycled.

11

Per plaintiff, defendant's attempted construction of the statute would "stretch" it's definitions to include plaintiff's recycled products, in conflict with settled case law that holds "it is axiomatic that a statute will not be construed to lead to absurd results." State v. Provenzano, 34 N.J. 318, 322 (1961). "Tax laws must [ ] be construed reasonably so that the Legislature's purpose in enacting the statute is not destroyed." Stryker Corp. v. Dir., Div. of Taxation, 168 N.J. at 155. Plaintiff urges this court to follow Random House, which court looked at the legislative intent of the litter tax, not just to the statute's literal words, to find that books, while made of paper, are not truly "paper products" and thereby the taxpayer was not subject to the tax. Similarly, plaintiff argues that the legislature did not have plaintiff's recycled carboard boxes and displays in mind when it adopted the litter fee which is intended to reduce "carelessly discarded litter." Per plaintiff, "[t]he Legislative Findings clearly states the statute is targeting litter producing products that are carelessly discarded litter; not products, wrappings or taxpayers who carefully and assiduously contribute to the aesthetic, environmental, and economic interests of the State of New Jersey."

There is no dispute that plaintiff recycles its by-products, products and wrap. Moreover, as part of its statement of facts plaintiff cited recycling industry standards and statistics it culled from various sources which show significant recycling activity for corrugated cardboard and a market for the recycled material. In reliance thereon, plaintiff contends that its clients likely recycle plaintiff's products and the wrappings given that the industry statistics reveal that a high volume of corrugated cardboard is recycled, the corrugated cardboard recycling market is lucrative, and plaintiff's clients have recycling bins located outside their places of business.

In response, defendant contends that even though plaintiff recycles, there is no actual proof of what happens to plaintiff's products once they leave the manufacturing facility, nor does the

record prove that plaintiff's clients in fact recycle its products and/or the wrappings they arrive in. Per defendant, "[e]ven if Sutherland recycles its products, it does not have control over them once they are sold and cannot prevent their cardboard boxes from being discarded in public places or on public property." Defendant also objects to the fact that recycling data was submitted without any certification as to the authenticity or veracity of the information provided. The statistics were contained in a hearsay website and in a document never produced to the court. Defendant urges the court to reject the evidence, citing rules which require that facts presented to the court be made through affidavit on personal knowledge. R. 1:6-6; N.J.R.E. 901. See also, Valley Nat. Bancorporation v. American Motorists Ins. Co., 316 N.J. Super. 152, 156 (App. Div. 1998) (documents submitted to the court must be certified or submitted by affidavit not by mere attachment to a motion brief); Wells Fargo Bank, N.A. v. Ford, 418 N.J. Super. 592, 599-600 (App. Div. 2011) (document provided without certification on personal knowledge should not be considered by the court). Nonetheless, defendant contends, the information is immaterial since the only criteria specified by the statute is whether the packaging that holds the paper product is itself disposable. Defendant argues that the recycling statistics, whether evidentiary or not, are irrelevant to an analysis of the case since there is no exception or exemption contained in the statute for recycling litter-generating products or their disposable containers, packages, or wrappings.

Additionally, defendant clarifies that in choosing to solely argue subcategory one in the statute, it does not concede that subcategories two or three are not potentially implicated. Defendant is careful to note that while it is possible that plaintiff's products would fit within category two or three, defendant is not pursuing this claim since there is no clear evidence it can produce that the cardboard boxes or displays are "commonly found discarded/on property."

Defendant sees plaintiff's operations as producing "litter wrapped in litter" since the products are "paper products" sold in disposable wrap.

In considering plaintiff's arguments, the court finds no merit to plaintiff's contention that the statute is vague. Rather the court finds the language is plainly written. Plaintiff's products are clearly listed by the statute as "litter generating." Per the language section (12), "paper products," corrugated roll stock is excluded from the litter fee, products made of corrugated are not. N.J.S.A. 13:1E-215(e)(12). There is likewise no dispute among the parties that the products are distributed in wrap and the wrap is disposable. The statute clearly targets businesses responsible for the distribution of "paper products" packaged in disposable wrap. Where the statutory "language is clear, [the court's] task is complete." Myers v. Ocean Cty. Zoning Bd., 439 N.J. Super. 96, 100 (App. Div. 2015).

Plaintiff contends that because it recycles, the court must find that the legislature would not intend to tax its products given the statute's intent to rid the State of "carelessly discarded litter." However, plaintiff's approach would require an exception or exemption for its operations. Because the statute as plainly written does not contain an exception or an exemption for the recycling of products listed as "litter-generating" under the statute or the disposable wrap that makes them "litter-generating" the court is duty bound to follow the statutory language. N.J.S.A. 13:1E-215(e). In "discerning" the "Legislature's intent" the "court may not rewrite a statute or add language that the Legislature omitted." State v. Munafo, 222 N.J. 480, 488 (2015); see also, Cashin v. Bello, 223 N.J. 328, 335 (2015) ("a court 'may neither rewrite a plainly-written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language'") (internal citation omitted). Moreover, the litter tax

statute sunset and was enacted again, all without an exemption for recycling. Had the legislature intended to include an exemption for recycling it certainly could have done so.

Central to the court's decision in <u>Random House,</u> was the fact that the Director interpreted the statutory language to exclude newspapers and magazines from the paper products category, even though both remained in the definition of "litter" under the statute. Here, there is nothing to indicate the Director, or the legislature, intended to exclude recycled material from the law. Notably, in <u>Random House</u>, the court also considered and rejected taxpayer's recycling argument. The court there held, "[t]hat the cardboard boxes did not reach the ultimate consumer of plaintiff's books and may have been recycled by a wholesaler, distributor or retailer did not make them any less disposable that the boxes used to package the check and deposit slips in <u>United Jersey Bank</u>." 22 N.J. Tax at 501. The court concluded, "plaintiff cannot avoid liability for litter control tax on the grounds that the cardboard boxes used to ship its books were not disposable packaging or containers." <u>Ibid.</u>

Plaintiff contends it is entitled to relief under the language of <u>Stryker Corporation v. Dir., Div. of Taxation</u>, 168 N.J. 138, 155 (2001) ("It is well settled that tax laws are to be 'strictly construed against the state and in favor of the taxpayer'") (citing 3A Norman J. Singer, Sutherland Statutory Construction sec. 66.01 (5th ed. 1992)). However, contrary to plaintiff's position, an exemption is to be narrowly construed against the taxpayer. "Statutes granting exemption from taxation represent a departure and consequently they are most strongly construed against those claiming exemption." <u>Princeton Univ. Press v. Princeton</u>, 35 N.J. 209, 214 (1961); <u>Quest Diagnostics, Inc. v. Dir., Div. of Taxation</u>, 387 N.J. Super. 104, 109 (App. Div. 2006) ("The Court has repeatedly noted that 'tax exemptions are to be strictly construed against the claimant'").

15

Plaintiff's second argument remains for consideration. As noted, the <u>Random House</u> court looked beyond the literal words of the statute to consider whether artistic and intellectual property, in the form of a paper product, was meant to be taxed by the legislature.

> As with most principles of statutory construction, there are countervailing considerations which a court may also take into account. Thus the Appellate Division recently stated: [quoting Justice Weintraub] our obligation is "to give effect to the obvious purpose of the Legislature, and to that end 'words used may be expanded or limited according to the manifest reason and obvious purpose of the law. The spirit of the legislative direction prevails over the literal sense of the terms.'" <u>New Capitol Bar & Grill Corp. v. Div. of Employment Sec.</u>, 25 N.J. 465 (1957) (quoting <u>Alexander v. New Jersey Power & Light Co.</u>, 21 N.J. 339 (1956)). Cited in <u>Marshall v. Klebanov</u>, 378 N.J. Super. 371 (App.Div.2005).
>
> [<u>Random House</u>, 22 N.J. Tax at 495].

This court seeks to determine the appropriate reading of the statute based on the nature of plaintiff's products. Whether plaintiff's cardboard boxes and/or displays are the type of products that warrant a reading of the statute in line with the <u>United Bank</u> (utilitarian bank checks and deposit slips), or alternatively, whether plaintiff's products are akin to the type of artistic or intellectual view afforded the products in <u>Random House</u> (books), where the court found it would be inappropriate to read the statute literally, in contradiction to the obvious purpose of the legislature.

As far as plaintiff's cardboard boxes are concerned, no argument is made that they should be exempt from the statute for any artistic purpose. The court finds plaintiff's boxes are paper products wrapped in disposable packaging. The boxes are utilitarian and non-intellectual product. As such, the boxes fit squarely within the statute's definition of "litter generating products" subject to the litter fee. N.J.S.A. 13:1E-215(e).

On the other hand, plaintiff does argue that the carboard displays are used for advertising, and accordingly, have an artistic value that supersedes their utilitarian purpose under the Random House analysis. Per plaintiff the displays are used by clients in retail locations to hold and advertise product to customers, and thereby contain photographic artwork. Plaintiff argues such use is analogous to Random House, which in discussing the litter tax, said that an overly literal reading of the statute would define photographs, paper sculptures, and other works of art as litter-generating since they are, or primarily consist, of paper. Id. at 485. Such a finding "would be unreasonable, absurd, and in conflict with the purpose of the litter control tax as set forth in the legislative findings in connection with the adoption of the tax." Id. at 496-97.

Defendant contends the primary use for plaintiff's cardboard displays is to hold/display the clients' products and that they are far removed from the Random House artistic analysis since the displays are not truly akin to the artistry of a Picasso painting or a literary novel. Defendant views the displays as being closer to an easel upon which art might be drawn since the client's "graphics are applied to the corrugated sheet roll stock with environmentally friendly inks that are able to be removed." Moreover, neither the artwork of a painting or drawing, nor the literary work in a book, are created to be removable from the canvas or paper onto which they are printed. Accordingly, defendant argues that, like plaintiff's cardboard boxes, the cardboard displays are also "paper products" within the meaning of N.J.S.A. 13:1E-215(e), distributed in disposable packaging and wrappings, thus, are litter-generating products that subject plaintiff to the litter fee. N.J.S.A. 13:1E-215(e).

This court finds the displays are produced and sold to clients for their utility value in displaying retail goods, with graphics applied to advertise the client's products. In interpreting the statute, the court in Random House found countervailing considerations required a broader reading

of the term "paper products." That view was in driven in part by the Director's intent, made apparent by the language of the regulation, to read "paper products" broadly and thereby exclude literary material, including books and magazines from the litter fee. That element is missing from this case.[5]

The court finds that the graphics being printed to be removed from the displays prior to disposal juxtaposes plaintiff's displays from a book or artwork as analyzed in Random House, neither of which are traditionally stripped of their intellectual property via ink or paint removal, nor meant to be discarded after such a process. The displays in this case are disposed of after use through recycling. Plaintiff placed great emphasis on the value of the paper on which the display graphics are printed as part of a lucrative recycling industry rather on the value of the intellectual content applied to the display. Indeed, plaintiff views recycling corrugated as part of its profit center, including the recycling of its products. As such, the display qualities are distinct from books, paintings, paper sculptures or other works of art, nor would it be "absurd" to subject the

---

[5] After Random House was decided, the regulation was amended to exclude "book" from the definition of "paper products." N.J.A.C. 18:38-3.1(b)(12)(iii). However, as amended, the regulation excludes "advertising" from the definition of "book." Ibid. The amended regulation reads, in pertinent part:

> (b)(12) Paper products and household paper means all items of tangible personal property made or substantially derived from paper including all paper products for home or other personal use but does not include newspapers, magazines, books and roll stock produced by paper product manufacturers and wood pulp, sold as such.
> i.     A magazine . . . [no change to definition].
> ii.    A newspaper . . . [no change to definition].
> iii.   A book is a set of written or printed pages bound on one side and comprising literary composition, academic or authoritative work . . . The term book does not include pamphlets, brochures, flyers, periodicals or advertising.

[40 N.J.R. 5845(b) (October 6, 2008)].

18

displays to the litter fee.  Accordingly, the court finds that plaintiff's cardboard displays are "paper products" that are "produced, distributed, or purchased in disposable containers, packages or wrappings," outside of any artistic or non-utilitarian exception.  N.J.S.A. 13:1E-215(e).

Conclusion

The intent of the statute is to rid the State's landscape of litter.  In furtherance of that goal the statute targets certain litter-generating products and their manner of sale or distribution, with no exception or exemption for recycling.  Because plaintiff produces and/or distributes paper products, in disposable wrap, it engages in activity targeted by the plain language of the statute.  Thereby, this court's finds that its decision furthers the intent of the Legislature.

For the reasons set forth above, defendant's motion for summary judgment is granted and plaintiff's cross-motion for summary judgment is denied.

Very truly yours,

/s/ Christine Nugent, J.T.C.